## Bailey v. Shrader et al.
(Decided Oct. 20, 1936.)

664

OTTO C. MARTIN and M. L. HEAVRIN for appellant.

C. E. SMITH and GILMORE KEOWN for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

According to the appellant, H. D. Bailey, the appellee, H. P. Shrader, marshal of the town of Rockport, came to his filling station about dark on July 18, 1931, and there arrested him without cause, and,

in doing so, assaulted him with a black-jack. The officer then took him to the drug store, where his wound was treated by a doctor. On the way Bailey had sent word to the judge of the Rockport police court as to what had occurred, or was occurring, and the judge came to the drug store. There he asked the officer what Bailey was charged with, and he responded: "With plenty." When told there must be a specific charge, the officer then verbally charged Bailey with being drunk in a public place. Bailey stated to the judge that he was not guilty. Thereupon the police judge recognized him on his own bond to appear in his court on the following Monday morning. The marshal, however, refused to recognize this verbal order to release Bailey and declared that Judge Mason or no other judge could take his prisoner away from him. He called the sheriff's office for assistance and after a while two deputies arrived. Shrader directed Bailey to get in an automobile, and he was taken by him to Hartford, the county seat. Bailey was detained there in the courthouse in custody of a deputy sheriff, and perhaps Shrader also, until about 10 o'clock, and then released by Shrader to Judge Mason, who had gone there also.

According to the appellee, Shrader, when he went to the filling station to warn the driver of an automobile against operating his car with only one light burning, Bailey cursed him and ordered him away. When he stated that Bailey could not use that sort of language toward him or anybody else on the street, he undertook to arrest him. While Bailey was in the act of entering the building to obtain a weapon, as Shrader believed, and while resisting arrest, he tapped Bailey on the head with his black-jack. On the way and at the drug store there was some interference by Bailey's brother-in-law and perhaps others. He advised the police judge that he had arrested Bailey on the charge of being publicly drunk and breach of the peace. Since Bailey was still drunk, he refused to recognize the judge's directions to release him. Because of the extremely unsanitary condition of the local jail, and what seemed to him to be a purpose of some in the crowd to interfere with the arrest, he had called the sheriff for assistance. When the parties with their prisoner arrived in Hartford, the county judge could not be located for the purpose of obtaining a commitment to jail. Bailey having somewhat sobered up, Shrader released him in the care of Judge Mason as

being a discreet person, such as is referred to in the statute.

The foregoing is a sufficient statement of the essential facts, the details and conflicts in the evidence being omitted as unnecessary to the decision. It does not appear that anything else was done in the matter after the release of the plaintiff that night.

On account of this occurrence Bailey filed two suits for damages against the town marshal and the sureties on his bond. One was based upon the allegation that in making the arrest on the charge of drunkenness, and while plaintiff was submitting thereto, the officer wrongfully and maliciously assaulted him with a deadly weapon, and used more force than was reasonably necessary to effect the arrest. It also included the allegation that while in his custody Shrader had forcibly taken $115 off the plaintiff's person and converted it to his own use. The other suit was for false imprisonment, based wholly upon his continuance in custody after the police judge had directed his release on his own recognizance. Without objection the cases were consolidated. No trial was had until December, 1934. It resulted in a verdict for the defendants. Pursuing its leisurely course, the case is now submited on appeal by the plaintiff.

1. The trial court struck from the petition that part which sought recovery of the money alleged to have been forcibly taken from the plaintiff while in custody and converted by the marshal to his own use. Submitting that it is a duty of an officer to search a prisoner, it is argued that when he has done so but then refuses to return property lawfully possessed and unnecessary to be held as evidence, the officer is liable under his bond for that property or its value. Hence, it is argued that the court erroneously struck this part of the petition.

It is the duty of an arresting officer to search the person of a prisoner lawfully arrested and take from him any weapon or other thing which might enable him to escape, or any property connected with the offense which may be used as evidence against him, holding it for the disposition of the court. Turner v. Commonwealth, 191 Ky. 825, 231 S. W. 519; Ballou v. Commonwealth, 195 Ky. 722, 243 S. W. 922. If the officer takes property having no such relation and converts it to his own personal use, he has gone beyond and outside his

official authority. The statute requires that the bond of the marshal of a town of the sixth class shall be for the faithful performance of the principal's duties as an officer "and for any unlawful arrest, or unnecessary or cruel beating or assault on any person in making an arrest." The sureties are liable only for a violation of those official duties. Section 3690, Kentucky Statutes. The terms of the bond are that Shrader should "perform and discharge all the duties required of him by law as such town marshal to the best of his skill and ability." The taking of currency from the person of a prisoner merely charged with drunkenness could not have been for any official purpose. It was obviously a personal matter for which the sureties on the officer's bond cannot be held liable. Shelton v. National Surety Co. of New York, 235 Ky. 778, 32 S. W. (2d) 339. The court, therefore, properly struck the allegations from the petition and refused to recognize any right of recovery in a suit on the bond.

2. The appellant makes the point that having stricken that cause of action from the petition, it was error to permit the defendants to introduce in evidence any reference thereto; but having done so, it was further error to refuse the plaintiff the privilege of testifying regarding it. A witness for the plaintiff, in detailing the circumstances of the arrest in the course of his direct examination, related that Bailey told Shrader not to bother his money, and Shrader said he would take care of it. The plaintiff was recalled and asked if Shrader had taken any money off him, and he replied: "Yes sir." An objection entered by the defendants was sustained. However, in rebuttal the plaintiff testified without objection that Shrader had taken $115 from him and he did not get it back. In narrating what occurred, Shrader testified to taking a "bunch of money" from Bailey, which he did not count, but gave immediately to Bailey's friend and associate in business. The doctor testified likewise. We think this evidence, being presented simply as a part of the res gestæ, was competent.

Perhaps Bailey's answer, above referred to, should have been permitted to stand, but sustaining the objection to it can by no means be regarded as prejudicial, since he was permitted later to tell about it.

3. In substance, instruction No. 1 advised the jury that it was the right and duty of Shrader as a peace officer to arrest any person who had committed or was

about to commit a breach of the peace in his presence, and to use such force as was reasonably necessary to make such arrest; and if the jury believed that at the time Bailey assaulted and struck the officer, not in his own apparently necessary self-defense, or that he had committed a breach of the peace or was drunk in the officer's presence, it was the right and duty of Shrader to effect his arrest, and the duty of Bailey to submit to the arrest upon the officer's demand. The jury was then instructed if they believed that Bailey had not committed either of the public offenses mentioned, or if they believed that Shrader had used more force than was reasonably necessary to effect the plaintiff's arrest and because of such excess force, if any, the plaintiff had been injured by the defendant, then they should find for the plaintiff unless they believed as in instructions Nos. 2 and 3. Instruction No. 2 was the converse in reference to the rights and duties of the officer and the plaintiff. No. 3 covered Shrader's right of self-defense. We do not think instruction No. 2 is susceptible to criticism as being a repetition. The instructions were correct as far as they went, but seem to have been more favorable to the plaintiff than perhaps they should have been, for they did not embody any right of the officer to prevent an escape after arrest, which theory found support in the defendant's evidence. Stevens v. Commonwealth, 124 Ky. 32, 98 S. W. 284, 30 Ky. Law Rep. 290. The instructions offered by the plaintiff, and refused, about which complaint is made, likewise omitted that feature of the case. But the greater error in them consisted in their limitation, in effect, to the matter of a personal encounter and the right of self-defense on the part of the participants, and did not cover the official rights of the officer. It was not error to refuse to give them.

4. The court did not submit instructions on that branch of the case in which damages were claimed for the unauthorized detention or imprisonment after the police judge had undertaken to direct Bailey's discharge from custody by recognizing him to appear later in court. The plaintiff offered instructions which, though not correct in form, were sufficient to require the court to give proper instructions on this phase of the case if he was entitled to any at all. This question is to be determined upon the interpretation of several sections of the Criminal Code of Practice.

Section 46 provides that a person arrested without a warrant shall be taken forthwith "before the most convenient magistrate of the county," and the grounds of the arrest shall be stated to the magistrate. Unless it is disclosed that the offense was committed in some other county, section 48 provides that the magistrate "shall forthwith proceed to an examination of the charge." Construed in Myers v. Dunn, 126 Ky. 548, 104 S. W. 352, 31 Ky. Law Rep. 926, 13 L. R. A. (N. S.) 881. Section 26 defines magistrates as embracing judges of police courts. Section 309 provides:

"When a person has been arrested and brought before the city court or the judge thereof, charged with an offense within the jurisdiction of such court, and not requiring an indictment, he shall be forthwith tried, or at the discretion of the judge, held to bail for his future appearance for trial, or discharged from custody."

But these statutes of general application are qualified when the person arrested is drunk or disorderly. Section 394 imposes the duty upon all peace officers to arrest any "drunken person whom they may find at large and not in the care of some discreet person, and carry him before some magistrate of the county, city or town in which the arrest is made." Section 395 is similar in relation to the arrest of a disorderly person. Section 396 is as follows:

"If the arrests authorized in the last two sections be made during the night, the officer shall keep the persons arrested in confinement until the next morning, unless, in the case of an insane or drunken person, he deliver him into the custody of some discreet person, who will undertake to restrain and take care of him; and if the arrest be made in the local jurisdiction of a police or city court, the persons arrested shall be carried before the judge of such court unless he be absent."

The petition states that the plaintiff had been arrested on the charge of drunkenness, which condition was not negatived. He did not claim damages for false arrest in the first instance, but only for injury received through the use of unnecessary force in effecting his arrest.

There was no traverse of the allegations of the answers that Bailey was drunk when arrested or during

confinement, but the plaintiff's testimony and that of witnesses introduced in his behalf was that he was not drunk at any time. On the other hand, there was much evidence proving that the defendant was intoxicated. There is a practical admission that the plaintiff was guilty of such acts as constituted disorderly conduct under the law. We are warranted, therefore, in proceeding upon the conception that he was lawfully arrested for drunkenness and disorderly conduct.

The evidence shows the arrest was "made during the night," although it was quite early. The witnesses usually fixed the time as "just about dark." It was dark enough to require automobile lights to be turned on. One of the definitions of "night" given in Webster's New International Dictionary is: "The beginning of darkness; nightfall." The intent of the statute seeming to be if a person is arrested on these minor charges after the close of the day the magistrate should not be called upon to conduct an immediate trial, it must be regarded that this arrest came within the purview of the phrase "during the night," contained in section 396, above quoted. Therefore, the statute gave the town marshal the right, and perhaps made it his duty, to keep Bailey in custody until the next morning, unless he deemed it wise or expedient to deliver his prisoner into the keeping of some discreet person who would restrain and take care of him. Such being the construction of the statute, the officer was not obliged to recognize the attempt of the police judge to discharge the prisoner there in the drug store.

In Pepper v. Mayes, 81 Ky. 673, a prisoner was brought before a justice of the peace on a peace warrant on a Saturday night. He was drunk, and the magistrate committed him to jail. The prisoner afterward sued him for false imprisonment based on the ground that he should have been given a forthwith trial or released on bond. In the course of the opinion holding that the cause of action could not be sustained, the court said:

"The law does not require a judicial officer to hold his court at all hours of the night and day; nor does it require that he shall do violence to his conscience by holding an examining court on the Sabbath—although the proceedings of an examining court held on that day may be valid. Nor does the law

require or permit such an officer to try one who is temporarily incapacitated by drink to attend to or understand the charge preferred against him."

The latter provision of section 396 must be interpreted as requiring merely that persons arrested upon such charges shall at the proper time be taken before the judge of the police court if the arrest be made within his local jurisdiction, instead of permitting him to be taken before some other judicial officer defined as a magistrate by section 26 of the Criminal Code of Practice.

The conclusion, therefore, is that the trial court properly refused to instruct the jury upon this phase of the case.

5. The instruction as to the measure and kind of damages to be awarded is criticized, as it confined the jury to the allowance of compensatory damages only. It is submitted that the plaintiff had a right to recover punitive damages of the defendant Shrader, although he could not do so against the sureties on his bond. It is sufficient response to say that as the jury awarded no damages whatsoever, the error, if that be error, was harmless.

The judgment is affirmed.

Whole court sitting.