Everett WILSON, Appellant,

v.

Wallie HELLARD et al., Appellees.

James B. WELBOURN, Appellant,

v.

Wallie HELLARD et al., Appellees.

Court of Appeals of Kentucky.

March 25, 1960.

T. T. Burchell, Pleaz Wm. Mobley, Manchester, for appellants.

John C. Little, McKee, for appellees.

PALMORE, Judge.

Separate actions for false imprisonment brought by the appellants against the

Sheriff of Jackson County and two of his deputies were consolidated for purposes of trial and resulted in a verdict for the defendants. As best we can gather from a section in the middle of the brief styled "Points and Authorities" the errors assigned by appellants are that the trial court failed to give a peremptory in their favor and gave an improper charge in its second instruction to the jury. Since there was no motion for a peremptory it is necessary only that the latter contention be considered.

It appears from the evidence that in the late afternoon of March 20, 1957, the appellees had gone to the home of one Madden with a warrant for his arrest on a charge of public drunkenness. Madden had left home when the officers arrived and was walking down the road toward Owsley County, a distance of some 2 or 3 miles away, carrying a paper sack containing a fifth of whiskey, a pint of moonshine, and a quart of beer. This course of travel took him past the home of the appellants, Wilson and Welbourn (the latter being Wilson's son-in-law). Wilson and Welbourn say they had been at work logging all day and had come home at about 5:00 P.M. Wilson's wife sent them to the store, and as they left in Wilson's car (Wilson driving and Welbourn in the back seat) they discovered Madden on the road and gave him a lift on his journey toward Owsley County. They didn't quite make it, as the officers hove into view just after Madden had got into the front seat next to Wilson, the driver.

According to the occupants of the Wilson car, they knew nothing of the proximity of the officers until, a mile or so farther on, Welbourn heard a shot or shots from behind. The Sheriff says that as he drove up he saw the Wilson car back out of the drive with Madden aboard and proceed down the gravel road about 75 yards in front of his, the Sheriff's, car; that he followed, expecting to pull up next to Wilson and stop him at a point half a mile distant where a stop sign marked the inter-

section of the gravel road with Route 30, a blacktop road; that instead of stopping, Wilson ran through the sign and proceeded down the blacktop road, ignoring the Sheriff's siren and red flasher; that he (the Sheriff), observing that the speed of Wilson's car was accelerating, ordered one of the deputies to fire a warning shot in the air, which was done; and that the Wilson car wrecked after proceeding about a half mile on the blacktop highway. The Wilson car had developed a flat tire and ran into the ditch, evidently as the result of a bullet hole in the tire.

After the wreck but before the officers arrived Madden broke the bottles of whiskey and beer in the Wilson car. A brief fracas in which both Wilson and Welbourn allegedly were cracked on the head by the officers was followed by the immediate arrest of all three occupants of the car, and they were whisked to the county jail for the night without having first been taken to a magistrate for bail or commitment. Wilson was booked for drunken driving and was eventually acquitted when tried on a reduced charge of reckless driving. Welbourn was booked for public drunkenness but never was tried on any charge. Madden served time for public drunkenness, and is involved in this action only as a witness.

Although the appellants insist that they were not drunk and had not committed any other offense, and therefore deny the validity of their arrest in the first place, the gist of their complaint on this appeal is that the officers violated Criminal Code of Practice § 46 in failing to take them forthwith before a magistrate, and in failing and refusing to obtain medical treatment for their scalp wounds.

The Sheriff testified that the appellants and Madden were "bad drunk." It is uncontroverted that it was about dark when they were lodged in jail. Whether a magistrate was available was not shown by appellants, though it would appear from the Sheriff's testimony that one was available within a half hour.

The essential difference between the instruction offered by the appellants and that given by the trial court was that the latter made the officers' duty to take the appellants before a magistrate conditional upon a magistrate's being available to receive them. Such a qualification was proper. See Rosenberg v. Bax, Ky.1953, 258 S.W.2d 458. The instruction would have been in better form if it had required them to bring the prisoners before a magistrate *as soon* as it was reasonably possible for them to do so, because certainly an officer who has made an arrest without a warrant is not immediately and forever relieved of the duty when he cannot find a magistrate forthwith. However, on the whole the instructions given were more favorable to the appellants than they were properly entitled to have, particularly in the following respect:

Under Criminal Code of Practice § 396 an officer who arrests a drunk, insane or disorderly person during the night may incarcerate him until morning. This includes an arrest made at nightfall, after the close of the day. Bailey v. Shrader, 1936, 265 Ky. 663, 97 S.W.2d 575. Since it was undisputed that the officers and prisoners arrived in town at "dusky dark" and plaintiffs did not show the availability of a magistrate before that time, the instruction should have made the officer's duty to take the prisoners to a magistrate subject to the further qualification that if either or both of them were in a drunken condition the officers had the right to have the one or ones in such condition confined in jail overnight. As against the advantage inuring to the appellants in the· omission of this theory from the instructions, whatever disadvantage may be inferred from the deficiency in the form of instruction as noted in the preceding paragraph of this opinion pales to insignificance.

We are at a loss to understand the point appellants seek to make with respect to the failure or refusal of the officers to obtain medical treatment for them. Had the jury found the officers guilty of false arrest this would have been a circumstance to consider in assessing damages. Since the appellants offered no instruction as to any duty on the part of the officers in this regard there is no possible error to review, and therefore no occasion to consider whether such a duty existed.

The judgment is affirmed.