## Mattingly v. Commonwealth.

(Decided February 9, 1923.)

### Appeal from Henderson Circuit Court.

1. Intoxicating Liquors—Search Warrant.—A search wrarant can not be issued on an affidavit, or under oath or affirmation, which merely states the information and belief of the person sworn as to the existence of the ground necessary to be possessed by the officer who issues the warrant.

2.  Intoxicating Liquors—Search Warrant—Affidavit.—Where a stat-
    ute requires a written affidavit as the basis of a search warrant in
    a particular matter, a warrant may not issue upon an oral sworn
    statement, nor can the legislature authorize the issuing of one
    upon any grounds less than those required by the Constitution.

3.  Intoxicating  Liquors—Search   Warrant—Probable   Cause.—The
    "probable cause," upon which section 10 of the Constitution author-
    izes the issuing of a search warrant, must be possessed by the
    officer authorized to issue it, and not only by the one who gives
    the information to such officer by his "oath or affirmation;" there-
    fore, the *oath or affirmation* must contain such facts as to require a
    reasonable person to believe the truth of the grounds  and of course
    it would suffice if the violation is stated as a fact.

DORSEY & DORSEY for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellant, Herman Mattingly, was convicted in the
Henderson circuit court on the trial of an indictment ac-
cusing him of the offense of having in his possession an
illicit or moonshine still contrary to the statute in such
cases provided. He has appealed and his counsel urge a
number of grounds for reversal of the judgment, all of
which it may be said grow out of the incompetency of the
evidence offered by the Commonwealth in support of the
prosecution; the incompetency resulting from the insuf-
ficiency of the search warrant and the insufficiency of the
affidavit upon which it was issued, and only by means of
which the evidence for the Commonwealth was obtained.

It may be truly said that if the evidence was not ren-
dered incompetent for the reason stated, it was amply
sufficient to require the submission of the defendant's
guilt to the jury and, likewise, sufficient to sustain the
verdict of guilty, so that, the only question to which we
shall address ourselves is the sufficiency of the documents
referred to.  There is some question made about the suf-
ficiency of the search warrant in describing the tenant
house on defendant's farm where the incriminating evi-
dence was found as one of the places to be searched; but
in view of the fact that the affidavits upon which the war-
rant was issued wholly failed to measure up to the re-
quirements as announced in the recent cases of Colley
and Crawford v. Commonwealth, 195 Ky. 706; Price v.
Commonwealth, idem 711, and a number of others fol-

lowing them, we have concluded to confine our discussion to the affidavits alone.

There were two of them, one made by R. D. Burdon and the other by E. L. Douglas. The former, in his affidavit, stated as grounds for issuing the warrant "that he has reasonable grounds to suspect and believe, and that he does suspect and believe, that intoxicating liquors, to-wit, spirituous, vinous or malt liquors are being kept for sale and are sold or otherwise disposed of, in violation of law in or on a one story frame four room house," etc. Douglas in his affidavit said: "That he has reasonable grounds to suspect and believe and that he does suspect and believe that intoxicating liquors, to-wit, spirituous, vinous or malt liquors, are being kept for sale and are being sold or otherwise disposed of, in violation of law, in or on a one story frame house," etc. Each of the affiants stated that their belief extended, not only to the dwelling house, but to the "outbuildings belonging to said house." But, for the reason stated, we will not determine whether the latter statement was sufficiently descriptive to authorize the issuing of a warrant to search all the buildings on defendant's premises.

It will at once be seen that the affidavits contain no fact, but only a statement of affiants' belief, based upon "reasonable grounds," none of which are stated, but which, if they existed, *appear* only to the affiant and not to the court or officer whose duty it is to issue the warrant. Section 10 of our Constitution in part says: "And no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." The courts everywhere, without exception, construe that, and similar language in the respective constitutions, to mean that the *probable cause* must appear and be possessed by the officer who issues the warrant and not necessarily by the affiant who makes the affidavit and that it shall be made to appear to the officer issuing the warrant only upon "oath or affirmation."

The Constitution of some of the states requires that "no warrant shall issue but upon proper cause supported by affidavit, particularly describing the place to be searched or the person or thing to be seized." In other words, they require that the probable cause shall be supported by *affidavit* instead of *oath or affirmation,* the latter of which is contained in our Constitution. In those states, as will be seen in the case of State v. Peter-

son, 13 A. L. R. 1284, there must be a written affidavit setting forth the grounds for the issuing of the warrant, while it might not be so required when the Constitution uses the expression "oath or affirmation," and it was so held by this court in the case of Clark v. Hampton, 163 Ky. 698. But all the cases hold, no matter what the phraseology of the Constitution may be, that it is competent for the legislature to require a written affidavit as a basis for the issuing of the warrant in the particular classes of cases the statute deals with, and when so required it must be complied with, but the subject matter of the affidavit must measure up to the full requirements of the Constitution. In the Peterson opinion it is said: "In a great majority of the states, as well as the courts of the United States, it has been held that an affidavit on mere belief (of the affiant) does not fulfill the requirements of the Constitution in this regard, although there are a few decisions which hold otherwise. It is generally held that an affidavit is not sufficient if it is made on information and belief, and is not corroborated or supported in any way (24 R. C. L. 708), although there are some cases which hold to the contrary." The opinion, quoting from the case of State v. Gleason, 32 Kansas 245, further said: "Where a person or officer stated upon oath 'that the several allegations and facts set forth in the foregoing opinion are true, as he has been informed and verily believes,' he may have no knowledge of or information upon the subject, except mere hearsay, and yet he can conscientiously make such declaration. . . . If a warrant, in the first instance, may issue upon mere hearsay or belief, then all the guards of the common law and of the Bill of Rights of our own Constitution, to protect the liberty and property of the citizen against arbitrary power, are swept away." Many cases from other courts are referred to in that opinion, and it and their reasoning is, to our minds, unanswerable. Not only does an affidavit, stating only the "information and belief" of the affiant, state no fact calculated to produce "probable cause" in the mind of the judicial officer who may issue the warrant where such probable cause is required under the terms of the Constitution, but it also fails to state any fact for which the affiant could be held responsible either in a civil action for false arrest, or in a criminal prosecution for false swearing or perjury. Of course, all the courts hold that if the affiant states, as a fact, that the person referred to has committed a named offense, or

that the place or places to be searched contain the evidence sought to be obtained, it will be sufficient. But if that is not done, then concrete and tangible facts must be stated, which would be calculated to create in the mind of a reasonable person that there was "probable cause" to believe that the fact existed. The only courts holding to the contrary, so far as we have been able to learn, are those of Indiana in the case of Rose v. State, 171 Ind. 662; Iowa in the case of Koch v. District Court, 150 Iowa 151, and the early case of Lowry v. Gridley, 30 Conn. 450. The appellate court of Louisiana in the cases of State v. Doremus, 137 La. 266, and State v. Nejin, 140 La. 693, upheld the constitutionality of a statute permitting a search warrant to issue on an affidavit "that the affiant believes the place to be a blind tiger," when the statute permitted the warrant on such an affidavit, "and on such additional evidence as the court may require to make out a *prima facie* case." Those opinions were bottomed upon the theory that the court would require, in addition to the affidavit, other evidence sufficient "to make out a *prima facie* case" to his mind, and to authorize him to issue the warrant.

Following the Peterson case in the reported volume referred to, is that of Youman v. Commonwealth, 189 Ky. 152; and following it in the same volume (13 A. L. R., page 1316) is appended an extensive annotation, in which many cases are cited supporting the views herein expressed, and which is in full accord with those of the great majority of courts, all of which are bottomed upon what we believe to be unanswerable reasoning. But it is argued (and it is because of which we have been led to briefly reconsider the question), that our Criminal Code permits the citizen to be arrested and deprived of his liberty upon an affidavit, or upon oath or affirmation, containing only the opinion or belief of the affiant as to his guilt; and it is, therefore, said that if one can be deprived of his liberty upon such information and belief, his possessions or property may be searched or his property taken under a warrant supported by no greater or more comprehensive grounds. The trouble with the argument lies in the falsity of the premises upon which it is based, since it is not true that under the Code a warrant of arrest may be issued upon any such "information and belief." Section 31 of the Criminal Code authorizes a warrant of arrest to issue by a magistrate "from information given to him on oath" and from which "*he* shall be satisfied that there are

reasonable grounds for believing the charge." The "information given to him" has been frequently held to be more than the general statement of "probable cause" or the statement of the affiant's "information and belief" as to the guilt of the supposed culprit. Indeed, it was held in the Clark case, *supra,* that the provision of the section in the Code referred to, "from his (the magistrate's) personal knowledge," violated the provisions of section 10 of our Constitution, and was therefore invalid. As at least partially fortifying the same construction of the same section of the Code, its learned compilers inserted the form of affidavit necessary to procure a warrant of arrest, which is form No. 312, on page 1024, of the 1919 edition of Carroll's Kentucky Codes. The form of affidavit therein prescribed says: "Personally appeared before me, J. S., and states that ............ committed the crime of ............ in ............ county, Kentucky, on the ...... day of ............, 19............." It will be observed that this form states that the supposed culprit was actually guilty of the crime charged, and not merely that the affiant possessed "information and belief" that he was guilty. But, even if the Code, which is only a statute, did provide as contended for, it could not supersede the mandatory requirements of the Constitution.

Moreover, section 14 of chapter 33, Acts 1922, page 109, commonly known as the "Rash-Gullion Act," and being the only section requiring the issuing of a search warrant in cases like this, requires the affidavit upon which it is issued to describe "the house, building or premises, as nearly as may be where intoxicating liquors *are* sold or manufactured or disposed of, or illegally possessed in violation of this statute," etc. It will be seen that the affiant is required, not only to describe the house, etc., but they must be places "where intoxicating liquors *are* sold," etc. The italicised word in the quotation necessarily requires a stronger statement than mere "*information and belief*" of the affiant. Therefore, if a search warrant might legally issue upon the latter ground in some character of cases, still the statute permitting it to be done in this character of case requires more than that. We are, therefore, constrained to hold that the affidavits upon which the search warrant was made in this case were insufficient.

The Commonwealth insists, however, that the information that the officers testified to concerning what they observed and saw by looking into the window of the ten-

ant house, and before they forcibly entered it, was itself sufficient to maintain the conviction, although the evidence they found upon entering the house was introduced before the jury, after which the court admonished them to separate it from that observed by the witnesses looking through the window. If the latter evidence was competent, it is doubtful whether that which was given, but afterwards excluded, and which was much more conclusive and convincing, so influenced the jury as to render the judgment erroneous.

But, whether so or not, the witnesses who looked through the window and thereby obtained the information which the court declined to exclude, were at the time engaged in searching defendant's tenant house located in an enclosure not far from his residence, and the search may be made from the outside of the house as well as by going into it. In other words, we mean to say, that the officers were wrongfully upon the premises of appellant and wrongfully searching his possessions at the very time they looked through the window and obtained the information which is now claimed to be competent.

Our regretfully reached conclusion is that the conviction in this case, which we think is fully sustained by the evidence, if it was competent, must be reversed because of the failure to observe the constitutional, as well as the statutory requirements mentioned, but that consequence is due more to the enforcement officers who started the machinery of the law in motion than to any defect in the law itself.

For the reasons stated the judgment is reversed with directions to grant the motion for a new trial and for proceedings consistent herewith.