## Williams v. Commonwealth.

(Decided June 10, 1930.)

730

L. O. SILER for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS C. VEST for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Craig Williams appeals from a judgment convicting him of the offense of malicious cutting and wounding with intent to kill, and fixing his punishment at five years' imprisonment.

Si Ridner, the prosecuting witness, and several other persons, who had attended the Decoration exercises at the Canada graveyard in Whitley county, were en route home. A few minutes prior to the difficulty appellant had borrowed Ridner's knife for the purpose of cutting his finger nails. Ridner testified that while he was walking down the road appellant jumped off his mule, grabbed his cap, threw it down, and said, "By God, you have been talking about me all day." Ridner denied this and said that he did not want any trouble. Appellant then hitched his mule and followed Ridner down the road. Ridner heard him coming behind, and as he turned around appellant cut him in the side with the knife. Ridner picked up his cap, but did not pick up a rock or attempt in any way to strike or injure appellant. Ridner's account of the affair is corroborated by several other witnesses, who were present. On the other hand, appellant testified that Ridner had been drinking. As he rode down the road, he reached over and knocked Ridner's cap off. Ridner wanted to know what he was doing,

and he said "It's a free country and I can go anywhere I want to, I reckon." At that time he was not mad. He then asked Hazel Moore to ride behind with him. She said she did not want to ride. He then got off and tied his mule and thought he would walk down the road. Ridner then said for him to go on; that he did not need to be with those girls. The others were going the same way he was going. As he went down the road, Ridner stopped and said, "Craigadee (or Sanadee), you can't do me this way." Ridner then slapped him with his left hand and drew the rock back. As Ridner did this he cut Ridner.

The first ground urged for reversal is that the court erred in not granting appellant a continuance and compulsory process to have his witnesses present. The affidavit for continuance alleged that appellant was not ready for trial because of the absence of Charles Ridner, Simon Vanderpool and Mrs. Simon Vanderpool, Tilford Rose, Albert Canada, and Ervin Rose. It is alleged that if Simon Vanderpool and Mrs. Simon Vanderpool were present, they would testify that they were at the quarrel and fight, and as Ridner was being taken home about four or five minutes after the fight and was passing them in the road where they were standing they heard him say, "Craig got me all right, but I give his jaw a good jolt, and if I could have used my rock the damned scoundrel's brains would have been mashed out." That if Tilford Rose, Albert Canada, and Ervin Rose were present they would testify that about a week before the fight they heard Ridner say that the next time Craig came over there to church he intended to run him off or give him a good licking; that Williams had no business taking his girl or meddling in his business. The affidavit further alleges that the Vanderpools and Charlie Ridner were present in court two days and that he had no way to prevent their leaving; that he had had the other witnesses duly summoned and had done all humanly possible to secure their attendance.

The record discloses that on the day before the trial warrants of arrest were issued for the absent witnesses, and that Charles Ridner, one of the absent witnesses, appeared and testified at the trial. It further appears that the affidavit as to what Tilford Rose, Albert Canada, and Ervin Rose would testify to was read to the jury, but that the testimony of the Vanderpools was excluded. This is not a case where the accused was denied compul-

sory process for his witnesses. On the contrary, compulsory process was granted. The only question, therefore, is whether the continuance was improperly denied. We have ruled in a number of cases that the matter of granting a continuance in a criminal case because of absent witnesses is one that addresses itself to the sound discretion of the trial court, and ordinarily it is not an abuse of discretion to refuse a continuance in the absence of a showing that the presence of the absent witnesses was necessary in order that the full effect of their testimony may be had. Roberson's New Kentucky Criminal Law, sec. 1907.

Here there is no suggestion that the proper effect of the evidence of Tilford Rose, Albert Canada, and Ervin Rose could not be had without their presence in court, and as it related to a circumstance alleged to have occurred some time before the difficulty, and there were several persons present at the difficulty, we are not disposed to hold that the refusal of a continuance on account of the absence of the witnesses was prejudicial error.

But the point is made that the court improperly refused to permit the affidavit to be read as the deposition of the Vanderpools. We see no error in this. The statement attributed to the prosecuting witness was not a spontaneous exclamation made during the difficulty, or so near thereto as to be a part of the res gestae. On the contrary, it was a mere narrative statement made by Ridner four or five minutes after the difficulty, and while he was being carried home from the scene of the difficulty and was passing the witnesses in the road.

Another contention is that the court erred in permitting the prosecuting witness to contradict the testimony of Tilford Rose, Albert Canada, and Ervin Rose, set forth in the affidavit for a continuance. The commonwealth was not permitted to show that the witnesses, if present, would not have testified as stated in the affidavit. The court merely permitted the prosecuting witness to deny the statement attributed to him in the depositions of the absent witnesses. This practice conforms to section 189, Criminal Code of Practice, which provides that the attorney for the commonwealth shall be permitted to controvert the statement of such affidavit so read by other evidence, and to impeach such absent witness or witnesses to the same extent as if he or they were personally present. It is true that this section contains the proviso that the court may, when from the nature of

the case it shall be of the opinion that the ends of justice require it, grant a continuance, unless the attorney for the commonwealth will admit the truth of the matter which it is alleged in the affidavit such absent witness or witnesses would testify to. In this case the court did not require the commonwealth's attorney to admit the statements as true, and in view of the character of the evidence the case is not so exceptional or peculiar that we can say there was an abuse of discretion. Not having required, and the circumstances not being such as to require, such admission on the part of the attorney for the commonwealth, the case does not fall within the proviso, and it was proper to permit the prosecuting witness to deny the statements attributed to him by the absent witnesses.

The further point is made that the court erred in impaneling a jury to try appellant on one indictment and then trying him on another. In this connection it is stated in brief that the attorney for the commonwealth said to the jury, ''We will not try the defendant for cutting Jim Brown, but will wait until the grand jury gets a new indictment and try defendant on the Si Ridner indictment.'' It is claimed that this action was prejudicial in view of the fact that it brought to the attention of the jury that appellant had been indicted for a crime other than the one for which he was tried. The statement attributed to the attorney for the commonwealth appears only in the brief of counsel for appellant. There is nothing in the record to show that he made such remark, or that the case of commonwealth against appellant for malicious cutting and wounding Jim Brown was ever called for trial or brought to the attention of the jury. Even if we are at liberty to consider the affidavit of the clerk, all that it shows is that when she went to look for the indictment charging appellant with cutting and wounding Ridner she found another indictment charging him with cutting and wounding Jim Brown and thought that was the Ridner indictment, but as a matter of fact the indictment for cutting Ridner could not be found. The record then discloses that the matter was re-referred to the grand jury, and a new indictment charging appellant with cutting and wounding Ridner was returned. In the circumstances we fail to see how appellant was in any way prejudiced.

There is no merit in the contention that the plea of former jeopardy should have been sustained. The

jury was impaneled to try appellant on the charge of cutting and w,ounding Ridner. Not being able to find the indictment, the case was re-referred to the grand jury, which returned another indictment in lieu of the former indictment. The proper practice was pursued. The jury was never discharged, and appellant was never in· jeopardy until tried on the new indictment, which was a mere substitute for the old one.

The great numerical weight of the evidence is to the effect that appellant cut Ridner without justification or excuse, and it cannot be said that the verdict is not sustained 'by the evidence.

Judgment affirmed.