## Miller v. Commonwealth.

(Decided November 7, 1930.)

HAYNES CARTER for appellant.

J. W. CAMMACK, Attorney General, and S. B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing.

Appellant and defendant below, Tom Miller, was convicted in the Hardin circuit court at his trial, under an indictment so charging him, of unlawfully possessing intoxicating liquor, and from the verdict, and the judgment pronounced thereon, he has filed a transcript of the record in this court with a motion for an appeal. The only ground urged by counsel for appellant for a reversal is: That the evidence of the prosecuting witnesses as to the unlawful possession was incompetent and that the court should have sustained defendant's objections thereto, and erred in overruling them, which, if correct, leaves no testimony in the case to sustain the charge and the asked for peremptory instruction should have been given.

A determination of the question calls for a statement of the substance of the commonwealth's testimony on that issue, and which was: That defendant lives in the country and appears to have been engaged in farming. A federal prohibition officer and another witness, whom he had along with him as an assistant in the discharge of his official duties, appeared at the home of defendant in the daytime, and found him in his barn repairing an automobile, and asked him for a drink of water. Whereupon defendant requested his brother, Will Miller, to pump a fresh bucket of water from a well located in the yard near the residence and near to which (11½ feet) was the smokehouse. Before the water was pumped the officer and his summoned assistant left defendant in his barn and went to the well, and while standing on the low platform around it they claim to have seen through a crack in the door of the smokehouse two tubs, and "that they could see that one of the tubs contained meal or mash, and that after calling each

other's attention to this that they proceeded to open the door of the smokehouse which was closed when they looked through the crack and that when they entered the smokehouse, which was within about five feet of the appellant's house, and which was used in connection therewith, that they found two tubs which had been made by sawing a barrel in two in the middle and that they found that the tubs or one of them did contain cornmeal, or, as one of the witnesses said, a quantity of mash. That they then looked around for the defendant, Tom Miller, to place him under arrest for the illegal possession of this mash," but not seeing him they then opened the door of the residence and went into it and searched it and discovered the liquor for the possession of which defendant was indicted.

That testimony was corroborated by that introduced by the defendant, and it was shown by his proof that the crack in the door of the smokehouse was so narrow and small that no one could see through it from the platform of the well, and the prosecuting witnesses did not give its dimensions. Furthermore, it was shown that the prosecuting witnesses in some manner quenched their thirst before the water was pumped from the well, since they abandoned the tendered hospitality to furnish it to them, and never took a drink, but went to the smokehouse at once and unlatched the door or turned the bolt on it and entered. There was no search warrant issued by either a federal or a state officer, and, unless the presence of the officer and his assistant on defendant's premises immediately surrounding his residence was legally justified, their discoveries while there were clearly incompetent and their testimony concerning them should have been excluded.

We had before us in the cases of Mattingly v. Commonwealth, 197 Ky. 583, 247 S. W. 938, Jordon v. Commonwealth, 199 Ky. 331, 250 S. W. 1004, and Veal v. Commonwealth, 199 Ky. 634, 251 S. W. 648, and cases cited in those opinions, as well as a number of cases following them, questions similar and analogous to the one involved here, and in which we held that the discovered evidence given by the officers was incompetent because the searches, through and by which the facts testified to were obtained, were each and all made without a warrant, and were therefore unlawful and inadmissible under the well established rule upon the subject as

announced by this court in the cases of Youman v. Commonwealth, 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303, Ash v. Commonwealth, 193 Ky. 452, 236 S. W. 1032, and others following them. It would serve no useful purpose to consume time and space by inserting herein a detailed statement of the facts and circumstances under which the unlawful discoveries testified to in those cases were made, since a reference to those opinions will fortify our above statement that they were substantially the same as those found in this case. Especially is that true with reference to the cited Mattingly, Jordon, and Veal opinions. But the ruling of those cases is sought to be avoided in this one, and the admission of the testimony of the officer and his assistant sustained, upon the ground that they were lawfully on defendant's premises and saw the meal or mash in the tub through the crack in the smokehouse door whereby it was revealed to them that defendant was in possession of material for the operation of a still and had thereby committed a misdemeanor in their presence for which they could arrest him without a warrant and could break into and enter his residence for that purpose, and that in doing so they discovered the intoxicating liquor for possessing which he was indicted. But that argument to our minds is not only far-fetched, but also was not sustained by the proven facts.

In the first place, the presence of the officers on defendant's premises at the time was of their own volition, and the same was likewise true as to their presence upon the platform of the well. But, if it should be said that their presence at the defendant's barn was consented to by him, inasmuch as he did not object to it, there still remains the question as to whether he consented for them to go to his well in front of his smokehouse or for them to peep through any crack in its door for the purpose of observing its contents. However, if we put aside that question and concede that the officers were rightfully at the well, and further, that they lawfully looked through the crack of the door into the smokehouse, we then find that all they saw therein was two tubs made by sawing a barrel into halves with some "meal or mash" in one of them, and which the commonwealth insists was justification for them opening the door of the smokehouse and making further investigations therein.

However, after they had done so they discovered in one of the tubs only some wet meal and which it is insisted was in violation of the statute denouncing the possession of material for the manufacture of liquor. The Mattingly case is especially in point on these questions. There the officers were wrongfully at the location they occupied, and looked into an open door and made the discoveries to which they testified, and it was held that the facts to which they testified were unlawfully discovered and were incompetent. It was also so held in a prior case or cases referred to in that opinion. Following those cases, there is no escape from the conclusion that the federal officer and his assistant in this case were at the place where they claimed to have seen into the smokehouse of their own volition and through the ruse of pretending to want a drink of water, when in truth and in fact they were upon a searching mission although they stated to the contrary, but the facts conclusively contradict such statement.

However, if such matters should be put aside in their entirety, it is clear from the testimony of the two prosecuting witnesses that they did not see through the crack of the smokehouse door enough to authorize defendant's prosecution for possessing material for the manufacture of liquor, and that it was necessary to augment what they so saw by opening the door of the smokehouse and thereby complete the discovery by such unlawful act, and which, in substance, is what some or all of the cited cases supra so hold. But if we should put aside all of the foregoing questions, it still remains to be determined whether the forcible entry by the officers to defendant's dwelling was or was not lawful. If they had the right to arrest defendant, after the discoveries made by opening the door of the smokehouse, the evidence does not disclose that they made any effort to make the arrest, except to enter the dwelling house in the manner stated. They were in a position all the while to see defendant if he went from his barn into his residence, and they did not claim that he did so, nor did they return to the barn in search of him or make any other effort to effect his arrest, except to enter the house.

They made no effort, so far as the record shows, to arouse any one who might be in the house so as to give notice of their mission and purpose, and, if the defendant was located therein, to demand his surrender or their

entrance into the house for the purpose of making his arrest. They never at any time notified defendant that they were officers, and so far as he was concerned he had no knowledge other than that they were private citizens.

Section 40 of our Criminal Code of Practice says: "To make an arrest, an officer may break open the door of a house in which the defendant may be, after having demanded admittance and explained the purpose for which admittance is desired." Section 4583 of the 1930 Edition of Carroll's Kentucky Statutes contains nothing militating against the provisions of section 40 of the Criminal Code of Practice. Under the evidence, as it appears in this case, defendant was not in his residence at the time the prosecuting witnesses made their entry therein for the alleged purpose of arresting him, and they had no reasonable grounds to believe that he was within it. On the contrary, the proven facts and circumstances strongly tend to the conviction that he had made his escape from his barn and was at large, and it is clear to our minds that if it should be conceded that the prosecuting witnesses had the right to arrest defendant without a warrant (but which we do not hold to be true), then under the facts as they appear in the record they had no right to forcibly enter defendant's residence under the existing circumstances and at the time they did so, even if we should accept as true the statements of the witnesses that they made such forcible entry for the good-faith purpose of arresting the defendant, but which it is equally convincing was and is untrue, but that such entry was in fact made for the purpose of searching the residence to obtain evidence of defendant's violation of the section of the prohibition statute under which he was indicted.

As stated in the Mattingly case, supra, it is with reluctance that we reach the conclusion herein expressed when the evidence, had it been legally obtained, clearly establishes defendant's guilt. But it must not be forgotten that section 10 of our Bill of Rights is a part of the Constitution and one of the chief corner stones upon which the liberties of the citizens of the United States and those of the several states are rested, in that it preserves and guarantees the privacy of the home, except it be invaded in the manner herein pointed out. It is our first duty to uphold that section as a part or our Constitution, even though it nullifies a statute violative of its inhibitions, and equally is it our duty to discard and nul-

lify violative conduct and its fruits not directed and required by some statute but undertaken on the volition of the officer engaged in it.

Since therefore the entry of the. prosecuting witnesses into defendant's residence was without legal authority, their testimony objected to in this case was incompetent and should not have been admitted. Without it there was no evidence to authorize the conviction, and the motion for an appeal is sustained, the appeal is granted, and the judgment is reversed, with directions to sustain the motion for a new trial and for proceedings consistent with this opinion.