# Patton v. Commonwealth.

(Decided April 22, 1938.)

HILL & HOBSON for appellant.

HUBERT MEREDITH, Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant was convicted on a charge of storehouse

breaking. The jury fixed a penalty of one year's confinement in the state reformatory. He appeals.

As grounds for reversal it is urged: (1) That there was lack of evidence pointing to the guilt of appellant, hence the court should have sustained his motion for a peremptory instruction; (2) the verdict is flagrantly against the evidence; (3) the court admitted incompetent evidence, secured under an invalid search warrant; and finally (4) the court did not give the whole law of the case, because he failed to advise the jury what constitutes a "breaking."

The chief prosecuting witness, Mr. Greenwade, owns and operates a service station and garage on the outskirts of Prestonsburg. On Saturday night, October 10, 1936, he and Lester, an employee who looked after the business during the night, checked out the cash register around 11 o'clock, both making note of the money taken from the register. They took out $81.05 in money and $50.86 in checks. Mr. Greenwade testified that there were 60 cents in pennies; $11.50 in halves; $1.50 in quarters; $1.45 in nickels.; $3 in dimes, and $63 in currency, bills of fives, tens, ones, and twos. Both parties testified that one of the dollar bills had one corner held on by a paper clip, which Lester said he had placed thereon. A $2 bill had the figures "50" marked on the edge with a lead pencil.

Both the owner and his helper testified that Mr. Greenwade put the money and checks in a "poke" and placed it in the drawer of a filing cabinet behind the counter, whereupon Mr. Greenwade went home, leaving Lester in charge for the night. Later, about 2:30 a. m., Lester called his employer and told him there had been a robbery. Mr. Greenwade went immediately to the garage, and upon examination found a screen had been removed from an office window and placed on the ground. A further investigation developed that the sack with the money had been taken.

Lester stated that about 1:30 a. m. he picked up a newspaper, walked into a lower room and, as the night was chilly he lighted a gas fire and proceeded to read the paper. About 2 a. m. he went into the office to get his lunch, and noticed that the screen had been removed from the window. He investigated and found the money had been taken from the filing cabinet, and at once notified his employer. He also testified that appellant

frequently loafed around the garage, and on occasions had seen witness go to the cabinet drawer to make change; that on Monday morning following the theft appellant tried to borrow a dollar for the purpose of going up to Garrett. Both the proprietor and Lester testified that they saw money which had been taken from appellant, on the following Monday, and positively identified the torn dollar bill and the marked two dollar bill. This identification was made while the money was in the hands of the examining magistrate and the sheriff who made the arrest.

A druggist testified that on Sunday following the breaking he sold appellant a $3.50 kodak for which he paid in half dollars. Another witness testified that on the same Sunday appellant made a display of money, though it is fair to say he added: "I never saw him without money."

Appellant's defense was an alibi. He testified as to his whereabouts on the Saturday night of the robbery; he and two friends "fooled around" town until 9 or 10 o'clock, going up to a camp during the time. He says he went to bed about 10:30 or 11 o'clock, and Graham Music slept in the same room with him. Both say appellant did not leave the room until the next morning. As to the money found on his person by the sheriff on the Monday following the accused said he "worked it out on a pipe line," and had given it to his mother to save for him. He had planned to go to Milwaukee on Monday to see his sister and had gotten the money from his mother for the purpose. His mother testified to the same effect, saying she gave him about $55. The sheriff says he took either $48 or $58 from the appellant at the time of the arrest. The examining magistrate says the sheriff or deputy turned over to him $53 in currency and $10 in silver.

Appellant's mother testified that on the Monday morning she gave him $55 in tens, fives and twos; that one bill was "old and wrinkled." She also testified that appellant came home about the time fixed by him, went to bed, and did not leave the house until the next morning. She remembered giving him some silver, but could not say how much, or the denominations.

It is argued that there was a total failure of evidence of a "breaking." This may be disposed of by a reference to the testimony of Greenwade and his em-

ployee. Both say that a screen had been removed from the window and placed on the ground. The proprietor says that the window had been raised. Appellant insists that there is no evidence that the window was not open or the screen on the ground prior to the alleged break or entry. We are unable to follow this reasoning, or to find a basis for it when witnesses say that the window had been raised, and the screen removed and placed on the ground, which changed appearances attracted the attention of Lester.

As we read appellant's brief, we gather that the chief contention is that the evidence of the proprietor and his employee in regard to the identification of the money, or some particular bills, is incompetent because obtained by reason alone of the search warrant which the court held to be invalid, ostensibly because issued upon an insufficient affidavit.

The strongest circumstance showing the guilt of appellant was the fact that the currency in the hands of the sheriff, and later in the hands of the magistrate, the two bills bearing marks were identified as being the same which Greenwade and Lester checked out of the register on Saturday night. Counsel complains that, since the search warrant was held to be invalid, any and all testimony as to articles taken under the search warrant is necessarily incompetent. If the money was obtained from Patton on this alleged search warrant for the purpose of furnishing evidence on which to base an arrest, the evidence would be incompetent. Miller v. Com., 235 Ky. 825, 826, 32 S. W. (2d) 416; Marsh v. Com., 255 Ky. 484, 74 S. W. (2d) 943.

However, as we read the proof, it appears that on the morning of October 12 Lester obtained a warrant for Patton's arrest; that later in the day he or some one obtained a search warrant. The magistrate says he issued both, and placed them in the hands of the sheriff. The sheriff, called for the Commonwealth, stated that he arrested Patton in the afternoon on the street and, not desiring to embarrass him by a search there, took him in his car and drove to some point near the Abigail Theater, and then searched him, finding either $48 or $58, which he turned over to the examining court. He was not certain whether he had both a warrant and a search warrant, but added that he never made an arrest unless he was armed with the proper papers. The proof does show, beyond doubt, that the

sheriff did not endeavor to search Patton until after he had arrested him, placed him in his car, and proceeded to a less public place to make the search. Although the sheriff may not have had more than the search warrant, he had the right to make the arrest without general warrant, if he had reasonable grounds to believe that a felony had been committed, which he said was true. Tucker v. Vornbrock, 270 Ky. 712, 110 S. W. (2d) 659. We are persuaded from a reading of the proof that the sheriff held a warrant of arrest, but in either event it is clear that no search was attempted until after Patton had actually been arrested, and was in custody. It is also to be noted that while appellant testified at length in regard to the search he never at any time objected to the search.

Under the state of facts presented we are of the opinion that the testimony in respect of the marked bills taken from Patton was competent on two well-established grounds: First, because the evidence (including appellant's) shows that the search was made following a legal arrest. Johnson v. Com., 240 Ky. 123, 41 S. W. (2d) 913, 914; Bailey v. Shrader, 265 Ky. 663, 97 S. W. (2d) 575; Harrison v. Com., 266 Ky. 840, 100 S. W. (2d) 837. Where the search is made without objection on the part of the person, or the owner of the property searched, the search is legal and evidence obtained thereby is competent. Harrison v. Com., supra; Wiley v. Com., 246 Ky. 425, 55 S. W. (2d) 41; Com. v. Meiner, 196 Ky. 840. 245 S. W. 890; Brown v. Com., 208 Ky. 345, 270 S. W. 833.

The final complaint of appellant is that the court failed to give an instruction advising the jury as to what, in law, constitutes a "breaking," and on this point relies solely on the case of Rose v. Com., 40 S. W. 245, 119 Ky. Law Rep. 272, which in turn relied on an older case of Com. v. Bruce, 79 Ky. 560. These cases are to be readily distinguished from the instant case. In the Bruce Case the evidence showed that entry to the storehouse was made by removing a grating on the street, the accused thus gaining access to the cellar, thence to the storeroom, and the court instructed the jury to acquit if they believed that the grating was not a part of the storehouse. We held that the determination of this question, being a matter of law, was for the court and not the jury, and "that it was the duty of the court to tell the jury that such entry was a breaking

within the meaning of the statute." So in the Rose Case accused claimed entry was made through a partially opened window. It may be observed that we noted the Rose Case in Radley v. Com., 121 Ky. 506, 89 S. W. 519, 520, 28 Ky. Law Rep. 477, wherein the contention was that the court had failed to define "breaking." We distinguished the Rose Case because of the difference in facts, and in so doing said:

"Appellant's defense was not predicated upon the question as to whether there was, or not, an unlawful breaking, but that he was not present at the time the crime was committed.

"The case of Rose v. Com., 40 S. W. 245, 19 Ky. Law Rep. 272, upon which appellant relies to sustain this claim of error, was different from that at bar. There the testimony of the defendant was that the window was partly open, and that he entered through the window; and this court held that the defense turning upon the question of the proof of a breaking, the trial court should have defined what constituted an unlawful breaking. Appellant's defense was, practically, an alibi, and he was, therefore, not injured by the failure of the court to define to the jury the meaning of an unlawful breaking, there being no question that it was proved to be an unlawful breaking."

As we have pointed out elsewhere in the opinion, there is no doubt of an unlawful breaking having been shown sufficiently to take the case to the jury. The raising of the window, or removal of the screen, if the window was raised, constitutes a breaking. Collins v. Com., 146 Ky. 698, 143 S. W. 35, 38 L. R. A., N. S., 769; Com. v. Mackey, 171 Ky. 473, 188 S. W. 676; Gaddie v. Com., 117 Ky. 468, 78 S. W. 162, 25 Ky. Law Rep. 1585, 111 Am. St. Rep. 259; Carter v. Com., 196 Ky. 47, 244 S. W. 321.

After a careful reading of the record, we are convinced that appellant was accorded a fair and impartial trial. The court below, as was proper, apparently guarded appellant's constitutional rights in every respect. We are also convinced that the evidence, though circumstantial, was sufficient to authorize the verdict. The argument that the proof of appellant being elsewhere when the offense was said to have been committed, and as to his legal possession of the money

found upon him, was sufficient to overcome the proof against accused, is answered by saying that this presented a question of fact which addressed itself alone to the jury. The jury had the right to believe or disbelieve one set of witnesses as against another. There was ample evidence to take the case to the jury, and we cannot say that the verdict was contrary to the evidence.

Judgment affirmed.