## COMMONWEALTH v. BENTLEY.

Court of Appeals of Kentucky.

June 19, 1953.

J. D. Buckman, Jr., Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., for appellant.

J. E. Sanders, Pikeville, for appellee.

STANLEY, Commissioner.

The Commonwealth seeks an opinion as to the law with respect to a peremptory instruction to acquit Joe E. Bentley on a charge of transporting intoxicating liquor for purpose of sale in local option territory.

One night about 11 o'clock in February, 1951, two state policemen were in a parked car watching traffic, which was quite heavy, at the intersection of two highways in Pike County. They saw Bentley ignore a stop sign and run through a red traffic light at 30 or 40 m. p. h., and pursued him. Officer Craft testified they "ran him down and wrote him a citation for failing to stop at the caution light." After discussing it and "after seeing who it was and in writing the citation I says, 'You are under arrest,' and in a joking way I says, 'How much have you got?' and he says, 'Well, I have got it, Sergeant.'" Again: "I had my red light on and siren blowing, and he came over to the left of the road and when he got out I asked him if he knew that stop sign was there and he admitted he did know it and traveled that road quite often, and I saw who it was and I says, 'Well, Joe, you are under arrest, now how much are you hauling?' and he says, 'Well, I have got it,' he says, 'I have got two cases,' and I says, 'Do you want me to open your car or do you want to open it?' He was already put under arrest, and he says, 'I will open it up for you,' and he opened it up and there it was." Further: "A. As soon as I saw who it was I told him he was under arrest because I had an idea he had whiskey. Q. Then you searched his car? A. I did not, but he opened it himself. I asked him, I says, 'How much are you hauling?' and he says, 'Sergeant, I have two cases,' and I says, 'Do you want to open it or let me open it?' and he says, 'I will open it' and he did." Two cases of whiskey were found in the trunk of the car.

The officers took Bentley to police headquarters and called a justice of the peace over the telephone and told him Bentley "was charged with failing to stop at a stop sign and was given a citation on that and was charged with trafficking in illegal whiskey." The squire knew Bentley and directed that he be turned loose to appear before him the next morning.

The defendant's general reputation was shown to be that he was "engaged in illegal traffic of whiskey."

The court expressed the opinion that the search of the automobile was on suspicion and was, therefore, illegal, under Marsh v. Commonwealth, 255 Ky. 484, 74 S.W.2d 943.

We think there is a material difference in the facts. Marsh had voluntarily stopped his car near where police officers were. One of them went to the car and asked Marsh if he had done the shooting which the officers had just heard over the hill, and he answered, "No." The officer smelled the odor of liquor in the car and searched it. As stated in the opinion:

"A search of the automobile was made without the consent of the appellant and on mere suspicion. No offense was committed in the presence of the officer and appellant was not arrested until after the search had been made and the liquor discovered. It is doubtful that the information that the officer claims he had would have been sufficient to furnish probable cause for the issuance of a search warrant but certainly, under the circumstances, the officer was not authorized to search the automobile without a search warrant."

In the present case an offense had been committed in the presence of the officers, KRS 189.330(5), 189.990. It was one with which they were especially concerned and for which they were authorized to make an arrest. KRS 16.060, 281.370, Cr.Code Prac. § 36. It was after they had arrested Bentley on the traffic violation charge that he disclosed that he had liquor in his car and the search followed that admission. We think the law as given in Barnes v. Commonwealth, 305 Ky. 481, 204 S.W.2d 801, was applicable. An instruction prepared by the court for another trial on a similar charge advised the jury that if they believed beyond a reasonable doubt that the accused had operated his motor car in ex-

cess of a certain speed in the presence and sight of a highway patrolman, then, by implication, the officer had the right to arrest and after the arrest to search the car. In the present case, however, the testimony of the police officer that the accused had in fact committed an offense in his presence was not contradicted.

Applicable also is Campbell v. Commonwealth, 203 Ky. 151, 261 S.W. 1107. An officer observed a bulky object concealed under a woman's dress and suspected that she was unlawfully carrying liquor on her person. He asked her if that was not true and she admitted it was and told the officer the quantity. Thereupon he told her to relieve herself of the whiskey, which she did in his presence. It was not clear whether the arrest was made before or after the woman had relieved her person of the jars of whiskey but it was free of doubt that it was effected after her admission of its possession and after the officer's observation of the bulk and shape of the object concealed under her dress. The evidence was competent and sufficient to sustain a conviction.

Other cases hold also that if a search be made by consent or without objection on the part of the possessor of liquor, evidence obtained thereby is competent. Patton v. Commonwealth, 273 Ky. 258, 116 S.W.2d 311; Davenport v. Commonwealth, 285 Ky. 628, 148 S.W.2d 1054.

In the present case we think the evidence of finding the liquor in the car was competent and that the trial court committed error in directing a verdict of acquittal.

The law is so certified.