## UNITED STATES v. VALLOS et al.

(District Court, D. Wyoming. November 17, 1926.)

No. 2608.

1. **Intoxicating liquors** ⧉⇒249—**Search and seizure of liquor was not lawful where residence was entered only with warrant for arrest and arrest was not made.**

Officers' search of residence and seizure of liquor found therein was not lawful so as to permit the liquor to be used in evidence, in absence of search warrant, though the officers entered the place with warrant for arrest of the residents on a charge of possession of liquor; they not having found and so not having arrested those they sought.

2. **Intoxicating liquors** ⧉⇒247—**Only on ground that residence is being used for unlawful sale does National Prohibition Act authorize its search (Comp. St. § 10138¼ et seq.).**

Under National Prohibition Act (Comp. St. § 10138¼ et seq.), search of private residence is authorized only on the ground that it is being used for unlawful sale of intoxicating liquors.

Prosecution of Chris Vallos and another for violation of the National Prohibition Act. On defendants' motion to suppress evidence. Motion sustained.

Clyde M. Watts, Asst. U. S. Atty., of Cheyenne, Wyo.

H. S. Ridgely and C. A. Swainson, both of Cheyenne, Wyo., for defendants.

KENNEDY, District Judge. In the above-entitled cause pending against the defendants, charging a violation of the National Prohibition Act (Comp. St. § 10138¼ et seq.) in the unlawful possession of intoxicating liquors for beverage purposes, a motion has been interposed on behalf of defendants, praying for the suppression of evidence, for the reason that it was secured and will be used against them in violation of their rights under the Fourth and Fifth Amendments to the Constitution of the United States. A hearing was had upon the motion, evidence offered in behalf of the defendants and the government in support of their divergent contentions, and the matter of said motion is now before the court for determination.

From the evidence adduced upon the hearing, the following facts are made to appear: In a previous case against the same defendants an information had been filed charging them with a violation of the National Prohibition Act in the possession of intoxicating liquor, upon which a bench warrant was subsequently issued for the arrest of the defendant Chris Vallos and delivered to the United States marshal for execution. That official, not being acquainted with the defendant, invited one Davis, the deputy prohibition administrator for the district of Wyoming, to go with him for the purpose of identifying the defendant in making the arrest. They accordingly repaired to the residence of the defendants, who are husband and wife, where the marshal approached the front door and rang the bell, while Davis went toward the rear of the house for the purpose of intercepting a pos-

sible exit from that point. The front door was shortly opened by a young man who occupied one of the apartments in said house, and, upon inquiry of the marshal as to the presence of the defendant, informed the marshal that he was not there, whereupon the marshal informed the young man that he would like to make an examination to see if the defendant were there, and proceeded to enter the building, being shortly followed by Davis. The marshal repaired to the apartment of the defendant, and made an investigation which did not reveal the presence of the defendant, nor was he arrested at that time or place. Davis also went into the apartment of the defendant, and in the bathroom, wherein was situated a bathtub, observed some object in one end of the bathtub which was covered by a small bath rug which he threw back, thereby revealing some packages done up in burlap. Davis, testifying as a witness for the government, stated that the appearance of the covered object in the bathroom led him to believe that the object concealed might be a man, while other witnesses testified that it would be impossible for a man to have been concealed under a rug in as small a place as was covered by it. Davis also testified that, upon seeing the packages under the rug, he became convinced that they contained liquor, by reason of the fact that he had seen liquor upon other occasions in the exercise of his official duties done up in similar packages. One of the packages was apparently open at the end, although no liquor was observable when the packages were first revealed. He took hold of the top package, and as a result a pint bottle, alleged to contain whisky, dropped out, whereupon he took into his possession and away from the residence of the defendant the several packages found in the bathtub. Upon this alleged unlawful possession of liquor the information in this case is based. No search warrant for a search of the premises was held, either by the marshal or by Davis, at the time, and Davis upon his sole responsibility took the packages of liquor away from the residence of the defendant. There is some evidence to the effect that, when Davis was purporting to assist the marshal in a search for the defendant, one of the brothers or sisters of the defendant's wife informed Davis that he could not search the house unless he had a search warrant for the purpose, to which Davis replied that he did not need any, although Davis testified that he had no recollection of such conversation having taken place.

[1] The question is whether or not this was a lawful search and seizure which will permit the liquor so apprehended by Davis to be used in evidence against the defendants upon the trial. It is the contention of the government, as the court understands it, that, because Davis was lawfully in the house of the defendant, he had the right to make such a search as would enable him to determine whether or not the defendant was present for the purpose of assisting the marshal in making the arrest, and that, if in that search he discovered liquor, he had the right, and it was his duty, to take possession of it, especially inasmuch as he was an officer engaged in the enforcement of the prohibition law. The defendant contends that Davis exceeded his authority, as by the testimony of the marshal he was taken along and deputized solely for the purpose of making an identification of the defendant, and that he had no right to search the premises; further that, even if he had the right to make a search of the premises for presence of the defendant, he had no right to make an examination of property for the purpose of ascertaining its nature when it became apparent to him that the defendant was not thereby concealed; and particularly counsel for defendant contend that, being without a valid search warrant, no search of a private dwelling for the presence of liquor or for any other purpose than that of ascertaining the presence of the defendant could be lawfully made, and that anything found by such a search could not be used as evidence against the defendant in support of a charge as to its unlawful possession.

It is quite apparent from the testimony that, whether or not it may be found that Davis exceeded his authority in making any search of the premises, he did at least act merely upon his suspicions, gleaned from former experiences as to what certain packages contained, in performing additional acts to confirm those suspicions, after he had convinced himself that the defendant was not there concealed, which acts in the premises were undoubtedly in excess of his authority, either official or delegated.

However, the determination of the point involved in this case need not rest upon so narrow a finding of fact as is here indicated. While this court has already held, in cases involving similar facts, that searches of private dwellings without a search warrant cannot be upheld, yet it has also held that, where an arrest has been made of a defendant charged with crime, his person and his

property in and about him may be searched. The difficulty in the case at bar, so far as the government's contention is concerned, is that no arrest of the defendant was made at the time or at the place where the search was conducted, so that the validity of the search in this case cannot be based upon the arrest of the defendant. The Supreme Court of the United States has quite recently passed upon a case which is at least analogous in its legal aspects to the case at bar. Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145. The facts in that case were that the defendant, along with others, had been arrested for a violation of the Harrison Anti-Narcotic Act (Comp. St. § 6287g et seq.) and various articles were found in the possession of at least some of the defendants who were together at the time. This arrest was made at a place other than the home of the defendant Agnello. The officers then went to the home of Agnello, and without a search warrant made a search of the premises and found a substantial quantity of narcotics which they apprehended and introduced on the trial of the defendant, with others, which over objection and exception on the part of the defendant was received, resulting in his conviction. The Supreme Court held that, although the law permitted a search without a warrant of the place where the arrest was made, as an incident to that arrest, it did not go so far as to permit the arrest to be made in one place and then to search the premises of the defendant at another place.

As this case is a recent pronouncement of the highest court of the land upon the subject of search and seizure under the constitutional provisions here invoked, and raises substantially the point here in question, this court will take the liberty of quoting at length from that decision. Beginning at page 30 (46 S. Ct. 5), the court says:

"The case involves the questions whether search of the house of Frank Agnello and seizure of the cocaine there found, without a search warrant, violated the Fourth Amendment, and whether the admission of evidence of such search and seizure violated the Fifth Amendment. The Fourth Amendment is: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' The provision of the Fifth Amendment invoked is this: 'No person * * * shall be compelled in any criminal case to be a witness against himself.'

"The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted [citing cases]. The legality of the arrests or of the searches and seizures made at the home of Alba is not questioned. Such searches and seizures naturally and usually appertain to and attend such arrests. But the right does not extend to other places. Frank Agnello's house was several blocks distant from Alba's house, where the arrest was made. When it was entered and searched, the conspiracy was ended and the defendants were under arrest and in custody elsewhere. That search cannot be sustained as an incident of the arrests [citing cases].

"Under the Harrison Act (section 8; section 1, as amended by section 1006, Act Feb. 24, 1919 [Comp. St. §§ 6287g, 6287n]), it is unlawful for any person who has not registered and paid a special tax, to have cocaine in his possession, and all unstamped packages of such drug found in his possession are subject to forfeiture. We assume, as contended by the government, that defendants obtained from Frank Agnello's house the cocaine that was taken to Alba's house and there seized; that the can of cocaine which later was found in Agnello's house was unlawfully in his control and subject to seizure, and that it was a part of the cocaine which was the subject matter of the conspiracy.

"The government cites Carroll v. United States [267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543] supra; but it does not support the search and seizure complained of. That case involved the legality of a search of an automobile and the seizure of intoxicating liquors being transported therein in violation of the National Prohibition Act. The search and seizure were made by prohibition agents without a warrant. After reference to various acts of Congress relating to the seizure of contraband goods, the court said (page 153): 'We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth

Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' It was held that, 'The facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the automobile which they stopped and searched.' Page 162. And on that ground the court held the search and seizure without warrant justified.

"While the question has never been directly decided by this court, it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein [citing cases]. The protection of the Fourth Amendment extends to all equally,— to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant. On the other hand, special limitations have been set about the obtaining of search warrants for that purpose. Thus, the National Prohibition Act, approved October 28, 1919, c. 85, tit. 2, § 25, 41 Stat. 305, 315 [Comp. St. § 10138½m], provides that no search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor or is in part used for business purposes, such as store, shop, saloon, restaurant, hotel or boarding house. And later, to the end that government employees without a warrant shall not invade the homes of the people and violate the privacies of life, Congress made it a criminal offense, punishable by heavy penalties, for any officer, agent, or employee of the United States engaged in the enforcement of any law to search a private dwelling house without a warrant directing such search. Act of November 23, 1921, c. 134, § 6, 42 Stat. 222, 223 [Comp. St. §§ 10184a, 10196a]. Safeguards similar to the Fourth Amendment are deemed necessary and have been provided in the constitution or laws of every state of the Union. We think there is no state statute authorizing the search of a house without a warrant; and, in a number of state laws recently enacted for the enforcement of prohibition in respect of intoxicating liquors, there are provisions similar to those in section 25 of the National Prohibition Act. Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. See Entick v. Carrington, 19 Howard's State Trials, 1030, 1066. Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause [citing cases]. The search of Frank Agnello's house and seizure of the can of cocaine violated the Fourth Amendment.

"It is well settled that, when properly invoked, the Fifth Amendment protects every person from incrimination by the use of evidence obtained through search or seizure made in violation of his rights under the Fourth Amendment."

[2] The Fourth and Fifth Amendments to the Constitution of the United States are as much a part thereof as the Eighteenth Amendment, and must be as equally observed. Furthermore, the Prohibition Enforcement Act under the Eighteenth Amendment prescribes with particularity how searches of private dwellings are to be made, specifically setting forth that no search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor. If the Congress of the United States wished to enlarge the privilege of search of a private dwelling by the assignment of other causes than the sale of intoxicating liquor therein, it would undoubtedly have added to the grounds upon which search warrants might be obtained, but in this case we have not only the absence of a search warrant, which is controlling, but also the lack of evidence of any kind which, if presented to a magistrate, a search warrant could have legally issued.

For the reasons stated, the motion must be sustained, and an order may be entered as prayed for, suppressing the evidence.