[Criminal No. 947.   Filed October 30, 1944.]

[152 Pac. (2d) 671.]

ADAM FABER, Appellant, v. THE STATE OF ARIZONA, Appellee.

Mr. Joe Conway, Attorney General, Mr. Thomas J. Croaff, Assistant Attorney General, Mr. James A. Walsh, County Attorney, and Mr. Francis J. Donofrio, Deputy County Attorney, for Appellee.

Mr. Jacob Morgan, for Appellant.

McALISTER, C. J.—In the Superior Court of Maricopa County the appellant, Adam Faber, was charged by information with the crime of *"fellatio,"* a felony, committed as follows:

"In the name and by the authority of the State of Arizona Adam Faber is accused this 3rd day of July, 1943, by the County Attorney of Maricopa County, State of Arizona, by this information, of the crime of *Fellatio,* a felony committed as follows, to-wit:

"The said Adam Faber on or about the 20th day of June, 1943, and before the filing of this information at and in the County of Maricopa, State of Arizona, did then and there wilfully, unlawfully and feloniously commit lewd and lascivious acts upon and with the body and person of one Howard Wojack, a male person, with the intent then and there and thereby to arouse and appeal to and gratify the lust and passions and sexual desires of him, the said Adam Faber and of the said Howard Wojack, in an unnatural manner; contrary to" etc.

Appellant moved for dismissal of this information upon numerous grounds. In substance, the

motion is that the information does not state a public offense and that the alleged crime of *"fellatio"* is not denounced in the English language. This information was drawn under Section 43-407, Arizona Code Annotated 1939, which reads as follows:

*"Fellatio and cunnilingus.*—Any person who shall wilfully commit any lewd or lascivious act upon or with the body of (or) any part or member thereof, of any male or female person, with the intent of arousing, appealing to or gratifying the lust or passion or sexual desires of either of such persons, in any unnatural manner, shall be guilty of a felony and imprisoned not less than one (1) year nor more than five (5) years."

Appellant contends also that this section of the statute is null and void and that no one can be prosecuted under it. In the recent case of *State* v. *Farmer et al.,* 61 Ariz. 266, 148 Pac. (2d) 1002, this court held the section constitutional and that an information drawn in its language is sufficient. This information is in the language of Section 43–407, *supra,* and meets all requirements.

The fact that the caption of the information uses the word *"fellatio"* in naming the offense is immaterial. The crime is that set forth in the body of the information and the word *"fellatio"* is not found therein. In *Merrill* v. *State,* 42 Ariz. 341, 26 Pac. (2d) 110, this court held that the name by which a crime is characterized in the caption does not constitute the charge, but that the act alleged in the body of the information is the offense for which a defendant is prosecuted, even though it shows a different one from that named in the caption. "The name of the crime" to use the language of *State* v. *Culbreath,* 71 Ark. 80, 71 S. W. 254, 255, "is controlled by the specific acts charged, and an erroneous name of the charge does not vitiate the indictment." In 31 C. J.

669, par. 189, is found this statement, which is supported by many authorities:

" . . . So, too, an indictment is good as charging the offense which the facts set forth in the indictment constitute under the law, notwithstanding an improper characterization thereof in the caption."

It appears that on June 20, 1943, a little after midnight, four officers went to the home of appellant at 715 N. Second Street, Phoenix, looking for evidence of a violation of the narcotic law. They went to the front door, but seemingly no one was there, whereupon they went to the rear of the building. One of the officers, Wallace, went to the back of the duplex where there was a screened sleeping room with a canvas flap 18 inches by 3 feet. He heard voices in this room. The language being used was obscene indicating, he thought at first, that a difficulty was taking place inside. He testified that the conversation he heard between the two men showed that a vicious act was occurring between them. Upon hearing this he called the other officers to him and they all listened for about five minutes and realized what was going on. It was distinct in every way, they being only about five feet away, and there was definitely an act of lewd and lascivious conduct taking place between the two men whereby they were having sexual intercourse in an unnatural manner, and also were gratifying the lust and passion of each other. Thereupon Mr. Wallace and Mr. Murphy stepped to the back door, Wallace opened it and Murphy threw his flashlight directly upon the two men. They were naked and did not know the officers were anywhere around until the flashlight was thrown on them.

Howard Wojack, a soldier from Hyder's Field, was lying on his back in the bed. He testified in substance to the same facts that Wallace did and stated that Faber told him to use the language he did. The

other officers, Tucker and Murphy, and Davis of the Government Narcotic Squad, also gave substantially the same testimony that Wallace did.

According to Wojack's testimony, he came to town that evening, went to the Y. M. C. A. for a shower and a swim, and then attended several different shows, getting out of the last one about midnight. As he was walking along the main street, appellant drove by in his car alone. He stopped and asked Wojack to get in his car and go over to his house and have a couple of drinks and Wojack did. They had some drinks and some spaghetti, after which appellant requested Wojack to take off his clothes and he did so. The appellant undressed also and they both got in bed, after which the occurrences Wallace described took place.

The appellant objects to the fact that he was arrested without either a warrant or a search warrant and contends that in so doing his rights and privileges under the Constitution of the United States and the state were violated, the privacy of his home invaded and the evidence so obtained unlawfully used in the trial. This, of course, depends on whether the entrance to the home of appellant was justifiable. The officer Wallace, as stated above, went to the back and stood just outside the room, under a window flap, and heard voices inside, the language being used indicating at first that a fight might be in progress. After a minute or two he called the other officers to him, and they all listened about five minutes to what was going on inside. They were able to tell from the sound what was taking place there and Wallace stepped to the back door and officer Murphy to the right of him just in front of the door and as Wallace opened it Murphy threw his flashlight directly on Faber and Wojack. They were both entirely nude, and realizing from listening on the outside, just four

or five feet from them, what was going on, the officers were enabled, through the sense of hearing, to know that a crime was being committed in their presence, and this gave them a right to enter the house and arrest the participants without either warrant of arrest or a search warrant. Hence, the arrest was perfectly lawful and violated neither the state nor federal Constitution and the evidence given by the officers was properly admitted.

█ █  In the cross-examination of officer Wallace, appellant's counsel asked him:

"You are the same Jim Wallace that participated in these raids in hotels without warrants and made arrests?"

It was objected to and the court sustained the objection, saying "we are going to conduct this in accordance with legal rules and manners, and you know that is improper." Appellant's counsel also moved for a mistrial because this occurred in the presence of the jury. The motion was denied whereupon the attorney asked:

"I will ask you if it is not a fact that you have never got any search warrant while you have been on the police force to make a search."

That was objected to and the court stated that he had ruled that that was immaterial and that if appellant's counsel persisted in asking these questions the court would have to fine him as being in contempt. The court said that he had a right to ask any legal or proper question, but when the court made a ruling he intended that the ruling should stand; whether Wallace had a search warrant or did not have a search warrant in other cases had nothing to do with this case. Appellant's counsel stated that he wanted to make a record and he and the county attorney went to the bench out of the hearing of the

jury where Mr. Morgan moved for a mistrial on the ground of the prejudicial remarks of the court. According to Mr. Morgan the question was propounded in good faith and he felt the court's remarks in the presence of the jury were inimical to the interests of the appellant. The court denied the motion saying:

"It is the policy of this court when it makes a ruling that the ruling shall be abided by by any attorney in the trial of a case, it makes no difference who he is or whom he represents, whether it is the state or the defendant."

We can see no error in the action of the court. Appellant's counsel had asked a very improper question and persisted in doing so, whereupon the court admonished that if he continued to do so he would be in contempt of court. Rulings of the court are supposed to be obeyed and when an attorney persists in violating them he is in contempt. We can see nothing wrong whatever in the court's action in this particular.

■ Appellant again objects that Wojack was not prosecuted. He claims that the offense charged is a joint crime and that inasmuch as both parties are not prosecuted neither can be. There is no such thing as partnership in crime and there is no provision in the Penal Code of this state requiring that all persons concerned in the commission of a crime must be convicted or else all will be acquitted. In *State* v. *Levice,* 59 Ariz. 472, 130 Pac. (2d) 53, 54, the court approved the rule announced in *State* v. *White,* 125 Tenn. 143, 140 S. W. 1059, 1060, Ann. Cas. 1913C, 74, in which the court said:

" ' . . . Each and every one who violates the criminal laws is subject to the whole penalty denounced. There is no partnership in crime, and there can be no division of the punishment that follows its commission. Payment of a fine by one of several offenders

cannot be allowed to relieve others equally guilty any more than the imprisonment of one will satisfy the law as to others. The guilt of one neither enhances nor mitigates that of the others. Every one is answerable for his own offense. . . . ' ''

■ Again complaint is made that the court denied cross-examination of state's witness Wojack. It appears that he was being interrogated on the question of whether he came to town from Hyder without a pass and he admitted that he did. This was followed by the question whether this did not mean that he came without the consent of his commanding officer and he admitted that this was true. The court thought this immaterial and instructed the jury that the fact that Wojack was in the city with or without leave had nothing to do with the case. Appellant claims that he had a right to show that he was in town without a pass and that the court should not have eliminated it from the consideration of the jury. Whether he had a pass was an immaterial matter and there was nothing wrong in the court's advising the jury of this fact.

There are several other assignments, but from what we have said in those we have considered, they have either been disposed of or are clearly without merit.

The judgment is affirmed.

ROSS and STANFORD, JJ., concur.