Elmer "Frenchy" DAVIS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 24, 1955.

Davies & Hirschfeld, Newport, for appellant.

J. D. Buckman, Jr., Atty. Gen., William F. Simpson, Asst. Atty. Gen., for appellee.

MONTGOMERY, Judge.

Elmer "Frenchy" Davis was convicted of the offense of setting up, carrying on, operating, and conducting a game of craps whereby money was won and lost, as denounced by KRS 436.230. The punishment imposed was a fine of $500 and confinement in the state penitentiary for one year.

Appellant and his wife, Rose Davis, also were tried jointly under an indictment for violation of KRS 436.075, charging them with procuring and soliciting a person for purposes of prostitution. By agreement, the charges under the two indictments were tried at the same time. Appellant and his wife were convicted on the joint charge and the punishment for each was fixed at one year's confinement in jail. Their motion for an appeal from that judgment has this day been overruled and the judgment affirmed. Davis v. Commonwealth of Kentucky, Ky., — S.W.2d —.

On the appeal from the conviction under KRS 436.230, operating a crap game, appellant complains that the court erred in permitting incompetent and irrelevant evidence, in its instructions, and in not sustaining his motion for a directed verdict.

The witnesses for the Commonwealth were two detectives of the Newport Police Department, Upshire White and Edward Gugel. While on duty about 3 o'clock in the morning of October 12, 1954, they saw a Cincinnati cab driver with two passengers arrive and enter a cafe known as "Corky's Bar" at Fourth and Central Streets in Newport. After talking with appellant and his wife, all parties left the cafe. Appellant was heard to say, "The cab driver is going ahead with the two men. We will come down." The cab driver and two passengers left. Appellant, his wife, and one Paul Morrison drove off in appellant's car, which was soon observed by the officers parked in front of the Alhambra Apartments, a few blocks from the cafe. After cruising in the vicinity for a few minutes, the officers returned to the Alhambra Apartments and saw the Cincinnati cab driver parked there. The cab drove away as they started toward it.

Knowing that appellant and his wife did not live in the apartment building, the officers decided to investigate. Appellant and his wife, when arrested, gave their address as 111 West Fifth Street. The apartment in which appellant was arrested belonged to "another party around town" known as "Checkerboard". Appellant told the officers that "Checkerboard" had consented for him to use the apartment in which to play cards.

After entering the building, the officers heard some conversation between men concerning gambling and could hear the noise as dice were being rolled or thrown. Proceeding to apartment No. 10 on the third floor of the building from whence came the noise, they heard and recognized the voice of appellant inside the apartment. They remained in the corridor outside the apartment several minutes, during which time they could hear the dice rolling on the floor. A voice was heard to say, "Come on! Put your money down. I got mine down. You

put yours down." Appellant's voice was recognized as saying, "Shoot ten—twenty—fifty". He was heard to say that he wanted to shoot a hundred but the man with whom he was playing would not do so.

Upon hearing this conversation, Detective White knocked on the door and in response to the inquiry, "Who's there?", said, "White". Some one inside the room said, "That is the cab driver. Let him in." Appellant then opened the door and the officers entered.

Appellant was standing alongside the door, and upon Gugel's asking, "Where's the dice?", he handed him a set of dice. Appellant admitted shooting craps and told the officers he had won $50. He asked permission to return the money and to get the loser, identified as one Newman, out of the room. Other conversation concerned the activities of one Louis Purdue and Rose Davis, not pertinent to this case.

As they were leaving the apartment and after being arrested, appellant handed Detective White another set of dice. The second set of dice differed from the first set, in that the spots on these consisted of groups of four, five, and six, whereas the first set had one, two, three, four, five, and six spots on them. As appellant handed over the second set of dice, he remarked, "I didn't have to use these. The man rolled the dice and lost his money the second rolling." Appellant explained that Newman threw out the dice and his point was five. On the next roll of the dice, he rolled a seven and lost.

The only testimony offered by appellant was that of Paul Morrison, who said that the party went to the apartment to play gin rummy and drink beer. He insisted that one of the strangers was an ardent crap shooter and upon his urging, appellant consented to play and won $50. Morrison admitted that he had no playing cards and saw none in the apartment.

Appellant contends that none of the evidence about crap shooting was competent because it was obtained without benefit of a search warrant or warrant of arrest and upon an improper search.

■ A peace officer may arrest without a warrant when a public offense has been committed in his presence. Criminal Code Section 36. In Dilger v. Commonwealth, 88 Ky. 550, 11 S.W. 651, it was held that a peace officer was authorized to make an arrest without a warrant, as being an offense committed in his presence, when he heard cries of a woman being beaten in a building and reached the room, located by the cries, after the beating had stopped and the cries had ceased. The Court said:

"While the offense of beating the woman was not committed in their sight, yet it was within their hearing, and when they were so near that they could not be mistaken as to the offender. This was within their presence, as contemplated by the law."

■■ The facts of the present case are even stronger than those of the Dilger case since the detectives listened outside the room, heard the rolling of the dice and accompanying talk, and recognized the voice of appellant. These facts were sufficient to indicate to the detectives that an offense was being committed in their presence. It is not necessary that the officer should see the conduct constituting the offense if the commission of the offense is made known to him by any of the five senses or combination of them. In the dark, one might be struck by an assailant without warning or notice so that the commission of the offense would be made known only by the sense of feeling. Likewise, the commission of an offense may be made known by the sense of hearing, as in the instant case. This is true whether the officer is prevented from seeing the offense by darkness or by a wall, as in the Alhambra Apartments. It is not hard to conceive of offenses the commission of which may be discovered by use of the senses of smell and taste. What was heard by the detectives in this case was sufficient to show that an offense was committed in their presence and definite enough for them to determine that appellant was the offender.

Under the evidence of this case, the detectives were warranted in making an arrest of the appellant under Criminal Code Section 36 and in accordance with the principles contained in the cases cited thereunder.

Willoughby v. Commonwealth, 313 Ky. 291, 231 S.W.2d 79, cited by appellant, is distinguishable from this case, in that in the Willoughby case no offense was committed in the presence of the arresting officers prior to their entry.

Since we have concluded that the officers were justified in making an arrest, any search following was proper. In this respect, the facts in the instant case are similar to those in Patton v. Commonwealth, 273 Ky. 258, 116 S.W.2d 311, wherein the search was made following a legal arrest and also was made without objection on the part of the person or the owner of the property searched. Both bases for upholding the admission of the testimony questioned by appellant are discussed in the cases cited in Patton v. Commonwealth, supra.

The appellant made no objection to any search following the entry of the officers into the apartment and his arrest. In fact, he readily surrendered the only material evidence admitted, to wit: two sets of dice. "Checkerboard", the alleged occupant of the apartment, was neither present at the time of the search nor did he appear to testify on the trial.

Appellant relies upon Adams v. Commonwealth, 313 Ky. 298, 231 S.W.2d 55, as authority that appellant's inviting the detectives to enter the premises should not be construed as an invitation to search. The Adams case is distinguishable from the present case, in that the appellant, Adams, was the owner of the premises searched and the appellant here was not. In Harrison v. Commonwealth, 266 Ky. 840, 100 S.W.2d 837, it was held that where no objection to the search was made at the time of the search, evidence obtained thereby is properly admissible. Cline v. Commonwealth, 312 Ky. 645, 229 S.W.2d 435.

Appellant urges that his motion for a peremptory instruction to find him not guilty should have been sustained and that the verdict is not supported by the evidence and is contrary to the law, in that the prosecution failed to prove that the crap game, as testified to, was set up, operated, or conducted for any compensation, percentage, or commission by the appellant. In Dills v. Commonwealth, 287 Ky. 582, 154 S.W.2d 543, it was held that KRS 436.230 did not punish a participant in a game of chance unless such person was instrumental in the management, operation, or control of the game. This rule was approved in Bowling v. Commonwealth, Ky., 254 S.W.2d 913.

The offense described in KRS 436.230 is a separate and distinct offense from that of gaming wherein money may be won or lost by two or more persons engaged in a game of chance. The commission, percentage, or compensation referred to in KRS 436.230 is the reward received by the operator of the game and is separate and apart from anything won in the game. Thus, the $50 won by appellant cannot be considered as such compensation under the statute as will sustain a conviction. Accordingly, appellant's motion for a peremptory instruction should have been sustained as to the charge made under KRS 436.230.

Judgment is reversed with directions that it be set aside and for proceedings consistent with this opinion.