[Crim. No. 11947. In Bank. July 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. GARY LYNN MARSHALL, Defendant and Appellant.

Daniel L. Schlegel, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

TRAYNOR, C. J.—Defendant was charged by information with possession of marijuana for sale (Health & Saf. Code, § 11530.5). He appeals from a judgment of conviction of the lesser included offense of possession of marijuana (Health & Saf. Code, § 11530) entered after a trial by a judge without a jury.

At 7:45 on Sunday evening, October 30, 1966, four police officers in an unmarked police car arrived at a vantage point across the street from defendant's apartment in Huntington Beach. They sent an informant to purchase marijuana from one Mathews,[1] who shared the apartment with defendant. At 8:15 the informant returned with marijuana in a cellophane-type bag and told the officers that defendant gave it to him free of charge. He also told them that the transaction took place in the bedroom and that the marijuana he was given was taken from a brown paper bag that contained more cellophane-type bags of marijuana.

The officers had neither an arrest warrant nor a search warrant, but decided to arrest defendant on the basis of the

---

[1]Mathews, a codefendant at the trial, was also convicted of possession of marijuana, but has not appealed.

informant's report. Because the front door was a large sliding glass door, they ruled out forcible entry as dangerous to person and property. When they could not find the apartment house manager to get a key to the door, they called the police department for an officer to pick the lock. An officer equipped to do so arrived at 8:30.

The officers knocked on the door several times, announced their identity, and demanded entry. There was no response. They then picked the lock, and at 8:40 entered the apartment with their guns drawn. They found no one in the apartment after a cursory search of the living room, the bedroom, and the bathroom. An open window with its screen removed indicated that the occupants had fled. One officer detected a sweet odor similar to that of the marijuana defendant had given the informant. In other narcotics investigations the officer had smelled similar odors from marijuana that had been soaked in wine. The odor came from an open cardboard box on the floor inside an open bedroom closet. In the box the officers found a closed brown paper bag, which, when opened, was found to contain 21 plastic bags of wine-soaked, sweet-smelling marijuana.

The officers then made a thorough search of the apartment until approximately 9:30 p.m., but found no other contraband. They remained in the apartment to await the occupants' return. They arrested Mathews upon his return shortly before 11 p.m. and arrested defendant upon his return about 1:30 a.m.

Defendant contends that the trial court committed prejudicial error in admitting the cache of marijuana into evidence over his objection that it was illegally obtained. He urges that the officers did not have reasonable grounds to believe that he was present in the apartment when they entered it and that since their entry was therefore illegal, the evidence was necessarily obtained illegally. (*People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706].)

Penal Code section 844 provides that ''To make an arrest . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which [the officer has] reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.'' ▮ By persistently knocking, demanding entry, and identifying themselves for several minutes before picking the lock and entering, the officers substantially complied with the notice requirements of

the statute. (See *People* v. *Rosales* (1968) 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *Limon* (1967) 255 Cal.App.2d 519, 522 [63 Cal.Rptr. 91].) ■ Moreover, substantial evidence supports the trial court's finding that the officers reasonably believed that defendant was in the apartment. It is true that after the informant returned and before the officers entered they did not constantly watch the apartment; that the informant had told them that defendant was planning to leave to attend a party; and that the apartment was dark and quiet. There was testimony, however, that the apartment entrance was visible from the squad car, and that one or more officers were always in the car before the entry. The informant did not tell the officers when defendant was planning to leave, and they saw no one leave the apartment, which was dark when the officers first arrived at the apartment as well as when they entered it. The officers believed that defendant was hiding inside, and the trial court could properly find that their belief was reasonable under the circumstances. Their entry therefore complied with section 844.

■ The burden remains on the prosecution, however, to justify a seizure of evidence without a warrant. (*People* v. *Burke* (1964) 61 Cal.2d 575, 578 [39 Cal.Rptr. 531, 394 P.2d 67]; *Stoner* v. *California* (1964) 376 U.S. 483, 486 [11 L.Ed. 2d 856, 858, 84 S.Ct. 889].) The Attorney General contends that although in fact no one was in the apartment, the officers could constitutionally seize the cache of marijuana in the course of a search of the apartment for the persons they reasonably believed to be therein.

■ During a lawful search of premises for persons believed to be in hiding, police officers may seize contraband evidence "in plain sight" (*People* v. *Roberts* (1956) 47 Cal. 2d 374, 379 [303 P.2d 721]; *People* v. *Gilbert* (1965) 63 Cal. 2d 690, 707 [47 Cal.Rptr. 909, 408 P.2d 365] [reversed on other grounds].) Under such circumstances there is, in fact, no search for evidence. (See *Ker* v. *California* (1963) 374 U.S. 23, 43 [10 L.Ed.2d 726, 743, 83 S.Ct. 1623]; *United States* v. *Rabinowitz* (1950) 339 U.S. 56, 75 [94 L.Ed. 653, 665, 70 S.Ct. 430] (dissenting opinion of Justice Frankfurter).)

■ In the present case the marijuana was not in plain sight. It was in cellophane-type bags that were in a closed brown paper bag that was in an open box in an open closet. The Attorney General contends that by virtue of the odor and the informant's report that the marijuana he was given came

from a brown paper bag, the officer had reason to believe that the brown paper bag contained marijuana. He concludes that the marijuana should therefore be deemed to have been in plain view of the officer.

This contention overlooks the difference between probable cause to believe contraband will be found, which justifies the issuance of a search warrant, and observation of contraband in plain sight, which justifies seizure without a warrant. However strongly convinced officers may be that a search will reveal contraband, their belief, whether based on the sense of smell or other sources, does not justify a search without a warrant. '' 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime[2]. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.' '' (*Chapman* v. *United States* (1961) 365 U.S. 610, 614-615 [5 L.Ed.2d 828, 832-833, 81 S.Ct. 776], quoting from *Johnson* v. *United States* (1948) 333 U.S. 10, 13-14 [92 L.Ed. 436, 439-440, 68 S.Ct. 367]; see *Jones* v. *United States* (1958) 357 U.S. 493, 497 [2 L.Ed.2d 1514, 1518, 78 S.Ct. 1253]; *United States* v. *Mullin* (4th Cir. 1964) 329 F.2d 295, 297.)

When officers seek to justify a seizure without a war-

---

[2]It is this point that is also not grasped by the dissenting opinion herein. That opinion completely ignores the rule that in the absence of some ''grave emergency'' (*McDonald* v. *United States* (1948) 335 U.S. 451, 455 [93 L.Ed. 153, 158, 69 S.Ct. 191]) a search of a dwelling cannot be conducted without a warrant except as incident to a lawful arrest therein. (*Chapman* v. *United States* (1961) 365 U.S. 610, 613 [5 L.Ed.2d 828, 831, 81 S.Ct. 776].) Of course there is no dispute with the many cases cited in the dissenting opinion that an officer may rely upon all of his senses in determining whether there is probable cause to believe that a crime has been committed or that contraband may be present. Probable cause alone, however, cannot justify a search without a warrant. '' 'Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are . . . unlawful notwithstanding facts unquestionably showing probable cause.' '' (*Chapman* v. *United States, supra,* quoting *Agnello* v. *United States* (1925) 269 U.S. 20, 33 [70 L.Ed. 145, 149, 46 S.Ct. 4, 51 A.L.R. 409].)

rant on the ground that no search was involved, the objects so seized must have been "in the plain view of an officer who has a right to be in the position to have that view . . ." (*Harris* v. *United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992, 993]), and must have been "fully disclosed and open to the eye and hand." (*State* v. *Quinn* (1918) 111 S.C. 174, 180 [97 S.E. 62, 64, 3 A.L.R. 1500] ; see also *Davis* v. *United States* (9th Cir. 1964) 327 F.2d 301, 305; *United States* v. *Barone* (2d Cir. 1964) 330 F.2d 543, 544; *Hiet* v. *United States* (D.C. Cir. 1967) 372 F.2d 911, 912; *People* v. *Kampmann* (1968) 258 Cal.App.2d 529, 531 [65 Cal.Rptr. 798] : *People* v. *Lees* (1967) 257 Cal.App.2d 363, 368 [64 Cal.Rptr. 888] ; *People* v. *Allison* (1967) 249 Cal.App.2d 653, 656 [57 Cal.Rptr. 635] ; *People* v. *Mandola* (1967) 249 Cal. App.2d 599, 604 [57 Cal.Rptr. 737] ; *People* v. *Jolke* (1966) 242 Cal.App.2d 132, 148 [51 Cal.Rptr. 171] ; *People* v. *Davis* (1961) 188 Cal.App.2d 718, 723 [10 Cal.Rptr. 610].)

A plain view of simply suspicious looking or unusual objects does not justify their seizure without a warrant. Thus in *California* v. *Hurst* (9th Cir. 1963) 325 F.2d 891, 898-899 (reversed on other grounds (1965) 381 U.S. 760 [14 L.Ed.2d 713, 85, S.Ct. 1796]), the court held a seizure illegal, stating : "All that was in plain view was a large brown package about six inches inside the exposed vent hole. Upon reaching into the vent hole and removing the package [the officer] observed that the package consisted of two brown paper bags which covered two plastic bags which, in turn, covered a pillowcase. The officer then felt the *pillowcase* and noted the weedy, leafy feel of the contents. There can be no claim that the feeling of the pillowcase occurred in a "plain view" observation since the pillowcase itself was surrounded by four outer wrappings, all of which were rolled into a cylindrical shape. But only upon feeling the contents of the pillowcase did officer Hanks shout that he had 'found the stuff.' " (Italics in original.) In *United States* v. *Vallos* (D. Wyo. 1926) 17 F.2d 390, the court found that officers illegally conducted a search when they saw suspicious looking lumps under a small rug, removed the rug, and discovered packages done up in burlap in the way contraband liquor was commonly wrapped. Although one of the packages was open, no liquor was visible until the officers took hold of the package and a bottle dropped out.

In the present case the brown paper bag itself was not contraband. Only by prying into its hidden interior (see *Bie-*

*licki* v. *Superior Court* (1962) 57 Cal.2d 602, 605 [21 Cal. Rptr. 552, 371 P.2d 288]) could the officer be sure that he was seizing contraband and nothing more. The fact that the container was only a brown paper bag instead of a packing box, purse, handbag, briefcase, hatbox, snuffbox, trunk, desk, or chest of drawers (see *People* v. *Roberts, supra,* 47 Cal.2d 374, 378-379) is immaterial. It is inherently impossible for the contents of a closed opaque container to be in plain view regardless of the size of the container or the material it is made of. A search of the container is necessary to disclose its contents. A search demands a search warrant.

█ Of course officers may rely on their sense of smell to confirm their observation of already visible contraband. (See *People* v. *Foote* (1962) 207 Cal.App.2d 860, 865 [24 Cal.Rptr. 752]; *People* v. *Chong Wing Louie* (1957) 149 Cal.App.2d 167, 170 [307 P.2d 929]; *People* v. *Bennett* (1967) 28 App. Div.2d 526 [280 N.Y.S.2d 258, 259].) To hold, however, that an odor, either alone or with other evidence of invisible contents can be deemed the same as or corollary to plain view, would open the door to snooping and rummaging through personal effects. Even a most acute sense of smell might mislead officers into fruitless invasions of privacy where no contraband is found.

Moreover, however keen their sense of smell, officers cannot seize the thing they smell until they find it after looking for and through the places from which the odor emanates. In short, they must still conduct a search. They may not do so without a warrant any more than without a warrant they may set loose a dog of unerring talent to sniff out contraband they reasonably believe will be found merely because they have lawfully entered the premises for another purpose. ''In plain smell,'' therefore, is plainly not the equivalent of ''in plain view.''

█ Moreover, even had the marijuana been discovered in plain view, the record fails to show that it was discovered in the course of a search of the apartment for suspects in hiding rather than in the course of a general search for evidence. ''Assuming that the warrantless entry into the apartment was justified by the need immediately to search for the suspect, the issue remains whether the subsequent search was reasonably supported by those same exigent circumstances. If the envelope were come upon in the course of a search for the suspect, the answer might be different from that where it is come upon, even though in plain view, in the course of a

general, indiscriminate search of closets, dressers, etc., after it is known that the occupant is absent.'' (*Gilbert* v. *California* (1967) 388 U.S. 263, 274-275 [18 L.Ed.2d 1178, 1187-1188, 87 S.Ct. 1951] (Appendix to majority opinion).) There was testimony that the officer identified the closet as the source of the odor when he entered the bedroom searching it for suspects. The testimony specifically directed to this issue, however, consists solely of the following colloquy between the prosecuting attorney and the officer who made the seizure:

''Q: Were you satisfied, Officer Epstein, that there was nobody in that bedroom before you found the sack containing marijuana?

''A: Yes.

''Q: It was after you were satisfied there was nobody there that you found the sack?

''A: Yes.'' We must conclude, therefore, that the prosecution failed to meet its burden of proving that the seizure was lawfully made in the course of a search for suspects. Indeed, the prosecution requested no finding of fact on this issue, and at the trial argued that the seizure was legal on the sole ground that it was incident to the subsequent arrest. (See *People* v. *Sesslin* (1968) 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321]; *Giordenello* v. *United States* (1958) 357 U.S. 480, 488 [2 L.Ed.2d 1503, 1510, 78 S.Ct. 1245].)

The seizure cannot be upheld upon that ground, however. A search is not incident to an arrest when it is conducted at a place remote from the arrest (see *Stoner* v. *California, supra,* 376 U.S. 483, 486 [11 L.Ed.2d 856, 858]: *People* v. *King* (1963) 60 Cal.2d 308 [32 Cal.Rptr. 825, 384 P.2d 153]; *People* v. *Henry* (1967) 65 Cal.2d 842, 845 [56 Cal. Rptr. 485, 423 P.2d 557]; *Hood* v. *Superior Court* (1963) 220 Cal.App.2d 242, 247 [33 Cal.Rptr. 782]; *People* v. *Garcia* (1964) 227 Cal.App.2d 345 [38 Cal.Rptr. 670]; *People* v. *Cruz* (1964) 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889]; *People* v. *Shelton* (1964) 60 Cal.2d 740, 744 [36 Cal. Rptr. 433, 388 P.2d 665]). To be valid the search must also be ''contemporaneous'' or ''substantially contemporaneous'' with the arrest. (See *People* v. *Cockrell* (1965) 63 Cal.2d 659, 666 [47 Cal.Rptr. 788, 408 P.2d 116]; *Agnello* v. *United States* (1925) 269 U.S. 20, 30 [70 L.Ed. 145, 148, 46 S.Ct. 4, 51 A.L.R. 409]: *United States* v. *Rabinowitz, supra,* 339 U.S. 56, 61 [94 L.Ed. 653, 657]; *Stoner* v. *California, supra,* 376 U.S. 483, 486-487 [11 L.Ed.2d 856, 858-859]; *Pres-*

*ton* v. *United States* (1964) 376 U.S. 364, 367 [11 L.Ed.2d 777, 780, 84 S.Ct. 881].)

 A search that is substantially contemporaneous with arrest may precede the arrest, so long as there is probable cause to arrest at the outset of the search (see *People* v. *Cockrell, supra,* 63 Cal.2d 659, 667; *Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 294 [294 P.2d 36]; *Holt* v. *Simpson* (7th Cir. 1965) 340 F.2d 853, 856; *People* v. *Griffin* (1967) 250 Cal.App.2d 545, 552 [58 Cal.Rptr. 707]; *People* v. *Torres* (1961) 56 Cal.2d 864 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Simon* (1955) 45 Cal.2d 645, 648 [290 P.2d 531]). No such justification exists in this case, however, for defendant was neither present nor arrested until several hours after the search. (See *People* v. *Egan* (1967) 250 Cal.App.2d 433 [58 Cal.Rptr. 627]; *People* v. *Garrison* (1961) 189 Cal.App.2d 549 [11 Cal.Rptr. 398].)[3]

We do not suggest that the officers in this case were motivated by a reckless disregard for the rights of persons. They discussed the possibility of obtaining a warrant, but rejected it as impracticable on a Sunday night. "[I]nconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate . . . [however] are never very convincing reasons . . . to by-pass the constitutional requirement." (*Johnson* v. *United States, supra,* 333 U.S. 10, 15, [92 L.Ed. 436, 441].) Having ascertained that no one was in the apartment, the officers could not legally search it without a warrant. "There was no question of violence, no movable vehicle was involved, nor was there an arrest or imminent destruction, removal, or concealment of the property intended to be seized." (*United States* v. *Jeffers* (1951) 342 U.S. 48, 52 [96 L.Ed. 59, 64, 72 S.Ct. 93].) "They made no move to obtain a warrant of arrest or of search, although time permitted it." (*People* v. *Egan, supra,* 250 Cal.App.2d at p. 437.) "[T]here was no probability of material change in the situation during the time necessary to secure such warrant. Moreover, a short period of watching would have prevented any such possibility." (*Taylor* v. *United States* (1932) 286 U.S. 1, 6 [76 L.Ed. 951, 953, 52 S.Ct. 466].)

---

[3]To the extent that *People* v. *Luna* (1957) 155 Cal.App.2d 493 [318 P.2d 116]; *People* v. *Williams* (1961) 189 Cal.App.2d 29 [11 Cal.Rptr. 43]; *People* v. *Vice* (1956) 147 Cal.App.2d 269 [305 P.2d 270], and *People* v. *Dominguez* (1956) 144 Cal.App.2d 63 [300 P.2d 194], are contrary to our conclusions herein, they are disapproved.

We conclude that the cache of marijuana found in defendant's apartment was unconstitutionally seized and was erroneously admitted into evidence over defendant's objection. Without that evidence, defendant clearly could not have been convicted of the charge of possession for sale. ▮▮▮ Moreover, the other evidence in the case was not sufficient, in itself, to support the conviction of the lesser offense of possession from which defendant appeals. That evidence consisted solely of a small quantity of marijuana allegedly obtained from the defendant by an informant whose reliability was not established, whose movements the officers admittedly could not observe without interruption, and whose information was corroborated only by illegally obtained evidence. It is clear, therefore, that the error contributed to the conviction. (See *Chapman* v. *California* (1967) 386 U.S. 18, 21-24 [17 L.Ed.2d 705, 708-710, 87 S.Ct. 824] ; *People* v. *Watson* (1956) 46 Cal. 2d 818, 835-837 [299 P.2d 243] ; *People* v. *Parham* (1963) 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001].)

The judgment is reversed.

Peters, J., Tobriner, J., and Sullivan, J., concurred.

MOSK, J.—I dissent.

This court, speaking unanimously in *People* v. *Roberts* (1956) 47 Cal.2d 374, 380 [303 P.2d 721], concluded that the "fact that abuses sometimes occur during the course of criminal investigations should not give a sinister coloration to procedures which are basically reasonable."

The majority's neat but indefensible segregation of the human senses—i.e., sight analysis is approved; smell and inferentially the other senses are rejected—results in holding the actions of the police here to be basically unreasonable. I would find the procedures to be entirely appropriate under the existing circumstances.

To require a police officer acting in the performance of his duties to totally disregard his olfactory reaction to marijuana —a leafy plant notorious for its identifiable odor—is utterly unrealistic. Equally untenable is a requirement that a warrant be obtained in this factual situation. As was said in *People* v. *Kampmann* (1968) 258 Cal.App.2d 529, 533 [65 Cal.Rptr. 798] : "To require in the present case that one officer go to obtain a warrant while the other remains camped by the marijuana would further no recognizable interest; it would magnify technicality at the expense of reason."

The majority hold that "officers may rely on their sense of smell [only] to confirm their observation of already visible contraband," and again, that an odor cannot be deemed "the same as or corollary to plain view" because this might "open the door to snooping and rummaging through personal effects." The foregoing assertion constitutes a policy declaration which is totally unsupported by logic or precedent. Indeed, the contrary view is expressed uniformly in California and virtually every other American jurisdiction. Not one case mentioned in the majority opinion supports the proposition that officers may not rely upon the sense of smell to provide justification for the seizure of evidence without a warrant.[1]

The two California cases cited as authority for the majority views are *People* v. *Foote* (1962) 207 Cal.App.2d 860 [24 Cal.Rptr. 752], and *People* v. *Chong Wing Louie* (1957) 149 Cal.App.2d 167 [307 P.2d 929]. Neither case, either in its facts or law, is helpful to the majority; in both, the officers were initially attracted to the scene through smell, and thereafter took additional steps to observe the contraband. That is essentially the instant circumstance.

In *People* v. *Foote* (1962) 207 Cal.App.2d 860, 862 [24 Cal.Rptr. 752], officers stopped a suspicious motor vehicle, *first smelled* the odor of marijuana, and then when using a flashlight to further investigate actually observed the contraband. The conduct of the officers was deemed reasonable, the conviction was affirmed and this court denied a hearing.

In *People* v. *Chong Wing Louie* (1957) 149 Cal.App.2d 167, 168 [307 P.2d 929], the officers smelled the distinctive odor of opium *before they entered* the defendant's room, and this, along with the *subsequent* confirmation by sight justified the seizure. Indeed, said the court (at p. 170), the prior "information possessed by the officers before smelling opium would have been insufficient to justify an entry, search or arrest."

*Chong Wing Louie* relied upon *People* v. *Bock Leung Chew* (1956) 142 Cal.App.2d 400, 402 [298 P.2d 118], in which the

---

[1]The majority, in their footnote 2 and throughout their opinion, fail to distinguish between warrantless officers breaking into premises, in violation of the Fourth Amendment, and those properly on the premises who fortuitously discover contraband without searching therefor. In *Chapman* v. *United States* (1961) 365 U.S. 610 [5 L.Ed.2d 828, 81 S.Ct. 776], the officers originally entered the premises unlawfully and in *Agnello* v. *United States* (1925) 269 U.S. 20, 31 [70 L.Ed. 145, 148, 46 S.Ct. 4, 51 A.L.R. 409], the search was clearly invalid because it involved premises "several blocks distant from [the] house, where the arrest was made." Here the majority concede the entry was lawful.

court grappled forthrightly with our problem and reached this conclusion: ''The basic question presented is: When officers detect the odor of a substance, the possession of which is made a felony, apparently coming from an apartment, does this justify their making an immediate entrance into and search of the apartment without first procuring a warrant. Since the possession of opium is a felony officers who detect the odor of opium are entitled to believe that the felony of possessing opium is being committed in their presence. We can see no logical distinction in this respect between something apparent to the sense of smell, and the same thing apparent to the sense of sight or to the sense of hearing.'' Again this court denied a hearing.

Case after case is consistent with the foregoing. For further example, see *People* v. *Burgess* (1959) 170 Cal.App.2d 36, 41 [338 P.2d 524], in which the court held that the ''term 'in his presence' is liberally construed [citation]. Presence is not mere physical proximity but whether the crime is '. . . apparent to the officers' senses' [citation]. The 'senses' include those of 'hearing and smell.'' And in *People* v. *Clifton* (1959) 169 Cal.App.2d 617, 619 [337 P.2d 871], it was held directly that ''An officer may use his sense of smell to afford him knowledge that an offense is being committed in his presence.''

The federal authorities referred to by the majority are inapposite to our problem: *Harris* v. *United States,* 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct 992] [the object was in plain view] ; *Davis* v. *United States,* 327 F.2d 301, 305 [the marijuana was in waste baskets in two separate rooms] ; *Hiet* v. *United States,* 372 F.2d 911, 912 [the bags were in plain view] ; *Love* v. *United States,* 170 F.2d 32, and *Paper* v. *United States,* 53 F.2d 184 [both involved discovery of stills; there was no indication of which sense was employed] ; *Harris* v. *United States,* 331 U.S. 145 [91 L.Ed. 1399, 67 S.Ct. 1098] [search of drawers approved; since only draft cards were seized, we may assume no smell was involved]. In *United States* v. *Barone,* 330 F.2d 543, 544, the officers were held properly on the premises as a result of using their sense of hearing.

Only *California* v. *Hurst,* 325 F.2d 891, 898, and *United States* v. *Vallos,* 17 F.2d 390, can give some superficial solace to the majority, for the use of touch was there disapproved. But factually the cases are distinguishable for the officers felt leafy substances after they had already improperly seized the packages; they were attempting post facto justification. Such

procedure would be frowned upon even if sight were involved.

Reference to *People* v. *Bennett*, 28 App.Div.2d 526 [280 N.Y.S.2d 258, 259], gives no aid or comfort to the majority. To the contrary, the court there approved seizure in the hallway of a suitcase from which officers detected the odor of narcotics. The court held that the proper seizure in the hallway did not justify subsequent entry and search of a nearby apartment.

Turning to other jurisdictions, we find universal approval of the doctrine that all of the human senses may be used by law enforcement officers and that sight alone is not the determinative test in ascertaining justification for a search without a warrant. The leading case most frequently cited is *Spires* v. *Commonwealth* (1925) 207 Ky. 460 [269 S.W. 532], in which the court held "That an officer is not limited to information derived through the sense of sight, but may rely and act as well upon information obtained through his other senses, is thoroughly established. . . . A little common sense added to the information conveyed by their senses of sight, smell and hearing left no room for reasonable doubt by the officers that defendant had [contraband] in his possession, and in their presence."

From that same jurisdiction the court in *Davis* v. *Commonwealth* (Ky. 1955) 280 S.W.2d 714, 716, made it clear that "It is not necessary that the officer should see the conduct constituting the offense if the commission of the offense is made known to him by any of the five senses or combination of them. In the dark, one might be struck by an assailant without warning or notice so that the commission of the offense would be made known only by the sense of feeling. Likewise, the commission of an offense may be made known by the sense of hearing, as in the instant case. . . . It is not hard to conceive of offenses the commission of which may be discovered by use of the senses of smell and taste."

To the same effect is a decision in *Utah Liquor Control Com.* v. *Mandeles* (1940) 99 Utah 507 [108 P.2d 512, 513]: ". . . if an officer becomes aware, through any of his five senses, of one or more details of the commission of an offense, and that detail or those details are of sufficient probative value to notify a reasonable person that an offense is being committed in his presence, the officer may rely upon his knowledge so acquired, and without a warrant, arrest the offender or seize the property as the case may demand.

Cases are legion upholding the use of any of the senses by law enforcement officers in ascertaining that there was probable cause for an arrest or a search and seizure. A *sense of smell* was involved in *Massa* v. *State* (1929) 159 Tenn. 428 [19 S.W.2d 248, 249]; *Ingle* v. *Commonwealth* (1924) 204 Ky. 518 [264 S.W. 1088, 1091] [in which the ''atmosphere was loaded with the perfumes of whisky'']; the *sense of hearing* was approved for an arrest or search in *State* v. *Peters* (Mo. 1922) 242 S.W. 894; *Dilger* v. *Commonwealth* (1889) 88 Ky. 550 [11 S.W. 651]; *Goodwin* v. *Allen* (1953) 89 Ga.App. 187 [78 S.E.2d 804]; *Wiggins* v. *State* (1932) 25 Ala.App. 192 [143 So. 188]; *Faber* v. *State* (1944) 62 Ariz. 16 [152 P.2d 671, 673]; *State* v. *McAfee* (1890) 107 N.C. 812 [12 S.E. 435, 10 L.R.A. 607]; *any of the senses* was approved in *State* v *Rigsby* (1942) 124 W.Va. 344 [20 S.E.2d 906]; *Romans* v. *State* (1940) 178 Md. 588 [16 A.2d 642, 647] [''heard or perceived by any other sense'']; *State* v. *Lutz* (1919) 85 W.Va. 330 [101 S.E. 434].

Thus it seems irrefutably clear that no prevailing law or precedent supports the majority position. Reason and common sense also dictate a contrary conclusion. Two simple illustrations will suffice to demonstrate the impracticality of limiting discovery of evidence to visual conception.

Assume an officer is fired upon in a totally dark room, the assailant casts the weapon aside and flees. There can be no doubt that the officer could search for and seize the weapon. The reasons relate to the use of his senses. While the room was dark and he could *see* nothing, he *heard* the shot, *smelled* the gunpowder, and *felt* the bullet graze his cheek.

Assume an officer, in searching a closet for a fugitive, comes upon a corpse under a sheet. Certainly he could uncover the body although he originally could not *see* it, because he *smelled* the putrefaction and *felt* the shape of a body.

The facts before us fall into the same general category as the foregoing hypothetical situations. The officers entered the apartment, properly so according to the majority, in order to make an arrest. They checked each room and found no one. In the course of searching for a person or persons, one officer looked in a closet, and while so doing *smelled* the sweet odor of marijuana emanating from a package the contents of which he could not *see* without unwrapping.

The majority seek to magnify the importance of the officer's testimony in which he conceded he was satisfied no one was in the bedroom closet before he became aware of the odor.

The officer's priorities were perfectly logical; he was searching for people, not objects. But reason rebels at the insistence of the majority that the officer must ignore the distinctive aroma of contraband merely because he failed to flush out his human quarry and his sense of smell was aroused instead of his sense of sight.

I return, therefore, to my initial paragraph. The test, according to *Roberts*, is whether the police procedures are "basically reasonable." Prevailing law, and common sense, indicate the conduct of the officers here was entirely reasonable.

I would affirm the judgment.

McComb, J., and Burke, J., concurred.

Respondent's petition for a rehearing was denied August 14, 1968, and the opinion was modified to read as printed above. McComb, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.